CHARLES A. BLALOCK, EMPLOYEE, PLAINTIFF v. ROBERTS COMPANY, EMPLOYER, AND PACIFIC EMPLOYERS INSURANCE COMPANY, INSURER, DEFENDANTS

No. 7111IC505

(Filed 20 October 1971)

1. Master and Servant § 94— workmen's compensation — injury by accident

There was sufficient evidence to support a finding by the Industrial Commission that plaintiff suffered an injury by accident to his left leg while plaintiff and a fellow employee were moving a heavy object.

2. Master and Servant § 93— workmen's compensation — hypothetical questions

In this workmen's compensation proceeding, hypothetical questions asked plaintiff's expert medical witnesses did not contain assumptions of fact not established by the evidence either directly or by fair and necessary implication.

3. Master and Servant § 94— workmen's compensation — findings of Industrial Commission

The findings of fact of the Industrial Commission are conclusive on appeal if supported by competent evidence in the record even though the record contains evidence which would support a contrary finding.

4. Master and Servant § 93— workmen's compensation — credibility of witnesses

The Industrial Commission is the sole judge of the credibility of the witnesses in a workmen's compensation proceeding and the weight to be given their testimony; it may accept or reject all or any part of the testimony of a witness.

5. Master and Servant § 56— accident causing eventual amputation of leg — sufficiency of evidence

There was sufficient competent evidence to support the Industrial Commission's finding that an injury by accident to plaintiff's left leg on 23 November 1968 caused a clot to form which obstructed an artery in the left leg and resulted in the amputation of the leg on 5 June 1969.

APPEAL by defendants Roberts Company, Employer, and Pacific Employers Insurance Company, Insurer, from the opin-

ion and award of the North Carolina Industrial Commission (Commission) filed 29 March 1971.

This is a proceeding under the North Carolina Workmen's Compensation Act wherein the plaintiff seeks to recover compensation for the loss of his left leg as a result of an accident allegedly sustained on 23 November 1968. Facts sufficient for an understanding of the questions raised by this appeal are set forth in the following pertinent portions of the opinion and award of the Commission:

### "FINDINGS OF FACT

"1. Plaintiff had a left ankle fusion in 1955 and a myocardial infarction in 1965.

"2. On 3 [sic] November 1968 plaintiff and a fellow employee engaged in handling a pan of generator parts which weighed 150 to 175 pounds. While so engaged plaintiff lost his balance and went down to the floor. The fellow employee let go his end of the pan and all of the weight of the pan went upon plaintiff. At such time plaintiff had a sharp, knife-like pain in the back of his left leg at a point just below the knee.

"3. Plaintiff sustained, as described above, an injury by accident arising out of and in the course of his employment with defendant employer.

"4. Following his accident, plaintiff continued to work despite the continuation of pain in his injured leg. On 27 November 1968 plaintiff consulted Dr. Lawrence Alexander, general practitioner of Sanford. Plaintiff gave a history of injuring himself on 23 November 1968 while lifting a pan of gears on his job and of pain in the left leg. Dr. Alexander's initial diagnosis was a strained muscle in the left leg. However, plaintiff did not respond to treatment and Dr. Alexander referred plaintiff to Dr. Daniel of Pinehurst. A diagnosis of plaintiff having torn a tendon in the leg was then made. However, plaintiff still did not respond to treatment and the doctor's final diagnosis was that plaintiff had sustained a vascular injury. Plaintiff was therefore referred to Dr. George Johnson, surgeon of Chapel Hill.

Blalock v. Roberts Co.

"5. Dr. Johnson first saw plaintiff on 9 February 1969. Plaintiff was still suffering with left leg pain at the time. Dr. Johnson felt that plaintiff had sustained an occluded artery in the injured leg, and on 13 February 1969 a femoral artery bypass was done. Plaintiff was out of work and temporarily totally disabled for two and one-half weeks at such time.

"6. Thereafter, plaintiff returned to work, but his injured leg continued to cause pain and to swell. He worked with defendant employer until 1 May 1969, when he stopped work in order to change jobs. He secured a new job as a truck driver in order to get off of his feet. While working as a truck driver, plaintiff's injured leg became worse while he was making a trip to Florida. He was hospitalized and treated there and then returned to North Carolina.

"7. Plaintiff was rehospitalized under the care of Dr. Johnson at Chapel Hill on 28 May 1969. It was found that the bypass graft in the injured leg had occluded and there was nothing to do but to amputate the leg. The left leg was therefore amputated at a point above the knee on 5 June 1969. Plaintiff reached maximum improvement or the end of the healing period from the amputation on or about 5 September 1969.

"8. Dr. Alexander is of the opinion that plaintiff's vascular injury occurred at the time of plaintiff's accident giving rise hereto and the onset of the left leg pain. Such doctor is further of the opinion that such accident eventually led to plaintiff's injured leg being amputated.

"9. Dr. Johnson is also of the opinion that the amputation could have been a result of the accident giving rise to this claim. The trauma sustained by plaintiff on 23 November 1968 caused a clot to form in plaintiff's left leg which caused blockage of one of the veins which eventually resulted in amputation of the leg.

"10. As a result of the injury by accident giving rise hereto, plaintiff was temporarily totally disabled for 2.5 weeks in February, 1969, and for the period 28 May 1969 to 5 September 1969.

"11. As a result of the injury by accident giving rise hereto, plaintiff sustained the loss of the left leg.

"The above findings of fact and conclusions of law engender the following additional

### "CONCLUSIONS OF LAW

"1. On 23 November 1968, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer. G.S. 97-2(6).

"2. As a result of the injury by accident giving rise hereto, plaintiff was temporarily totally disabled for 2.5 weeks in February, 1969, and for the period 28 day May to 5 September 1969. Plaintiff is entitled to compensation at the rate of $42.00 per week for such periods. G.S. 97-29.

"3. As a result of the injury by accident giving rise hereto, plaintiff sustained the loss of the left leg, for which he is entitled to compensation at the rate of $42.00 per week for a period of 200 weeks, commencing 5 September 1969. G.S. 97-31(15)."

From an opinion and award of the Full Commission denying the exceptions filed by the defendants, and affirming the opinion and award of the hearing commissioner, the defendants appealed to the North Carolina Court of Appeals.

*Pittman, Staton & Betts by William W. Staton and William E. Marshall, Jr., for plaintiff appellee.*

*Young, Moore & Henderson by Gerald L. Bass for defendant appellants.*

HEDRICK, Judge.

[1] By appropriate assignment of error defendants contend that the Commission's finding of fact number 2 is not supported by the evidence. There is ample competent evidence in the record to support this finding of fact, and in addition thereto, defendants state in their brief:

"The question in this case is not whether Blalock sustained an injury to the calf of his leg while moving a heavy object on the job. This is admitted. The question in the case is whether certain operations and the ultimate amputation of Blalock's leg above the knee were causally connected with a minor injury to the calf of his leg which Blalock sustained

in moving the heavy object some 2½ months prior to the first operation and 5½ months prior to the amputation."

[2] By assignments of error 1, 2 and 3, defendants contend that the hypothetical questions asked of plaintiff's expert witnesses, Dr. Alexander and Dr. Johnson, were improperly phrased and contained assumptions of fact not warranted under the evidence adduced. In hearings before the Industrial Commission, a hypothetical question asked of an expert witness is competent when it assumes facts which the evidence directly, fairly, and reasonably tends to establish. *Blassingame v. Asbestos Co.*, 217 N.C. 223, 7 S.E. 2d 478 (1940) ; *MacRae v. Unemployment Compensation Com.*, 217 N.C. 769, 9 S.E. 2d 595 (1940). We have examined all of the hypothetical questions asked of the expert witnesses and conclude that they assume only facts which were established by the evidence either directly or by fair and necessary implication. The probative force of the witnesses' responses is for the Commission.

The defendants' additional assignments of error present the question of whether there is any competent evidence in the record to support the Commission's determinative finding that plaintiff's injury by accident to his left leg on 23 November 1968 caused the clot which occluded the artery in his left leg which resulted in the amputation of the leg on 5 June 1969.

Expert witness Dr. Lawrence Alexander, a general practitioner, testified that he first examined and treated the plaintiff's injury, allegedly sustained on 23 November 1968, on 27 November 1968. The plaintiff remained under his care and treatment from 27 November 1968 until he was referred to Dr. Johnson at N. C. Memorial Hospital. With respect to the injury by accident on 23 November 1968 and its causal connection with the subsequent amputation of the left leg, Dr. Alexander testified:

"My own personal opinion would be like this: this was obviously the onset of symptoms for this particular illness that led to the period of disability, to the surgery to try to improve the circulation and finally to the amputation. This was the beginning of this particular illness.

\* \* \*

Apparently, from the very beginning, although we could not measure it exactly, and could not pinpoint it exactly; some

vascular injury must have occurred at the time of the onset of the pain."

With respect to the vascular injury, Dr. Alexander testified:

"I have an opinion that that vascular injury made the circulation even worse than it was."

Expert witness Dr. George Johnson, Jr., a specialist in general and vascular surgery, first saw and examined plaintiff with respect to the particular illness on 9 February 1969. He performed the femoral artery bypass graft on 13 February 1969 and was present and participated in the amputation of plaintiff's leg on 5 June 1969.

In response to a competent hypothetical question, Dr. Johnson testified: "I think that it is possible that the amputation could have been the result of the accident."

In explaining his answer to the hypothetical question, Dr. Johnson stated:

"[T]rauma to a vessel, a direct blow on a vessel, as allegedly happened, in some instances apparently has resulted in injury to the vessel sufficient to cause the vessel to clot. If this is what happened to Mr. Blalock, I think it is possible that this could have caused a thrombosis in that segment of the vessel. . . . "

[3, 4] The findings of fact of the Industrial Commission are conclusive and binding on appeal if supported by competent evidence in the record even though the record contains evidence which would support a contrary finding. *Hollman v. City of Raleigh,* 273 N.C. 240, 159 S.E. 2d 874 (1968). The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part. *Robbins v. Nicholson,* 10 N.C. App. 421, 179 S.E. 2d 183 (1971); *Morgan v. Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968); *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265 (1951). The Commission has the duty and authority to resolve conflicts in the testimony of a witness or witnesses. If the findings made by the Commission are supported by competent evidence, they must be accepted as final truth. *Rooks v. Cement Co.,* 9 N.C. App. 57, 175 S.E. 2d 324

(1970) ; *Petty v. Associated Transport*, 4 N.C. App. 361, 167 S.E. 2d 38 (1969). Webster's Third New International Dictionary (1967) defines trauma as "an injury or wound to a living body caused by the application of external force or violence [injuries . . . such as sprains, bruises, fractures, dislocation, concussion—indeed *traumata* of all kinds—*Lancet*]."

[5] After considering all of the testimony in the record in the light of the foregoing well established principles of law, it is our opinion that there is sufficient competent evidence in the record to support the Commission's finding that the trauma sustained by plaintiff on 23 November 1968 caused a clot to form in plaintiff's leg which caused blockage of one of the arteries which eventually resulted in amputation of the leg.

The findings of fact support the conclusion that as a result of the injury by accident on 23 November 1968 the plaintiff sustained the loss of his left leg for which he is entitled to compensation.

The opinion and award of the North Carolina Industrial Commission dated 25 March 1971 is affirmed.

Affirmed.

Chief Judge MALLARD and Judge CAMPBELL concur.