Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. At the time in question the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employment relationship existed between plaintiff-employee and defendant-employer.
3. Defendant-employer was a qualified self-insured whose claims were administered by the above-named servicing agent.
4. An Industrial Commission Form 22 Wage Chart indicating a Statement of Days Worked and Earnings of the Injured Employee dated August 16, 1993 and prepared by defendant-employer.
5. During the periods from January 16, 1992 through April 26, 1992 and from June 24, 1992 through May 1, 1993 plaintiff was out of work as a result of the neck problems giving rise hereto.
ADDITIONAL STIPULATIONS
A one page print-out indicating the group disability benefits that plaintiff received during these same periods out of work.
************
Based upon the competent, credible evidence of record the Full Commission adopts the following findings of fact of the deputy commissioner:
FINDINGS OF FACT
1. Plaintiff is a 36 year-old married male who has a high school education and 15 years experience in the welding trade, including his seven years with defendant-employer. Because of his permanent neck injury, however, he is unable to return to the same trade and is currently employed at Fairfield Harbor doing light mechanic work servicing and maintaining the premises motor vehicles.
2. At the time of developing the disabling neck condition giving rise hereto plaintiff was employed as a TIG welder by defendant-employer, which is engaged in the business of manufacture and repair of pumps for the pulp and paper industry.
3. Although only about 20 percent of his jobs involved heavy lifting; 80 percent of them involved work off the table in and around different types of large machines and equipment regularly requiring him to assume awkward bodily positions in order to be able to reach and do his welding work. While welding plaintiff also wore a helmet, whose shield he had to flip up and down, and at times in the course of welding had to do so with his neck in a flexed position (looking down).
4. In December of 1991 plaintiff sustained herniated discs at the C5-C6 and C6-C7 levels of his cervical spine manifested by progressively worsening neck and arm pain and weakness ultimately requiring him to undergo corrective surgery in the nature of anterior cervical diskectomies and fusions of both levels on or about April 5, 1992 when his condition did not improve with conservative treatment.
5. Plaintiff's condition subsequently improved following surgery enabling him to return to work for defendant-employer as a welder on April 27, 1992; but when he did experience a recurrence of his symptoms because of a nonunion of the fusion at the C5-6 level and underwent additional surgery at the same level involving a take down of the nonunion, decompression of the spinal canal and nerve roots and further another bone graft as well as take down of the longitudinal ligament and a foraminotomy, which was similarly done to the more significant disc herniation at the C6-7 level during his initial back surgery.
6. In December of 1991 plaintiff sustained the above-described cervical disc herniations requiring his initial neck surgery when he and only two of the three other people that were supposed to be helping them lifted a piano at church resulting in him developing progressive neck and arm pain and weakness.
7. Plaintiff initially sought treatment for his injury from a Chiropractor, Thornton; but got no relief of his symptoms and on January 16, 1992 was seen by the same orthopedic surgeon that had treated an earlier work-related left thumb injury, Dr. Harold Vandersea of New Bern.
8. In late December of 1991 after he had been seen by Chiropractor Thornton and was out of work for approximately three days because of his neck problems, plaintiff told his supervisor, Don Clark, as well as Teresa Orman, who handled the premises personnel matters, that he thought he may have pulled a muscle in his neck moving a piano at church under the circumstances described in Finding of Fact Number Six resulting in him being out of work and that he had been treated by a chiropractor for the same problems without relief. Plaintiff does not deny being involved in lifting a piano at church, but does deny injuring his neck doing so or telling defendant-employer that he had. Plaintiff's testimony, which if believed, would tend to establish that he did not injure his neck at church lifting a piano is not accepted as credible and is contrary to the credible evidence otherwise.
9. In January of 1992 after Dr. Vandersea had earlier taken him out of work on January 16, 1992 because of his disabling neck injury plaintiff filed a claim for short-term disability benefits under the non-contributory short-term disability plan that defendant-employer provided for its employees and as part thereof indicated that the disc rupture giving rise to the same claim was not due to a work-related injury or accident. He subsequently received $7,111.75 in benefits under the same plan, which would have entitled defendant-employer to a credit against any award of compensation benefits herein were the undersigned to find plaintiff sustained a compensable injury by virtue of defendant-employer's denial of the involved claim resulting in those same benefits not being due and payable under the Workers' Compensation Act.
10. Plaintiff denies injuring his neck lifting a piano at work; but rather, contends that his employment as a welder was a significant contributing factor in the development of his C5-C6 and C6-C7 disc herniations. The only medical history in the record that plaintiff's original neck problems were due to any particular injury is the one contained in Dr. Bright's Discharge Summary of having developed the problem lifting, which Dr. Bright assumed was at work, but is consistent with plaintiff having injured his neck lifting a piano at church and (is consistent with) the absence of any evidence of the involved neck injury being the result of a specific injury at work lifting or otherwise.
11. Even assuming arguendo that plaintiff's employment as a welder was a significant contributing factor in the development of his C5-C6 and C6-C7 disc herniations, the same injuries were neither the result of a specific traumatic incident occurring at a cognizable time at work nor an interruption of plaintiff's normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. According to his testimony plaintiff developed progressive neck and arm pain and weakness in December of 1991 without identifiable incident or injury, which is consistent with the history given Dr. Vandersea on January 16, 1992 of gradually increasing discomfort in his neck for the past couple of weeks without any specific history of injury. In fact, plaintiff does not even claim any particular injury occurring at a cognizable time nor is there any evidence of one other than the injury lifting a piano at church. According to the credible evidence, up until the time he initially developed the neck problems giving rise hereto plaintiff was merely involved in performing his normal welding job for defendant-employer as he had for seven years, which required heavy lifting at times, him to regularly assume awkward bodily positions in order to be able to reach and perform his work, wearing a welding helmet while working whose shield he had to flip up and down and at times in the course of welding to do so with his neck in a flexed position (looking down).
There is further no credible evidence that plaintiff's employment as a welder placed him at an increased risk of developing the disabling cervical disc herniations initially requiring him to undergo corrective neck surgery as compared to members of the general public or other employments at large — much less that the same employment was a significant contributing factor in the development of the same disc herniations.
12. As previously stated, plaintiff's condition initially significantly improved after undergoing neck surgery in April of 1992 enabling him to return to his regular welding job on April 27, 1992.
13. When he returned to his regular welding job plaintiff had a recurrence of his symptoms because of a nonunion of the prior fusion at the C5-C6 level of his cervical spine with resulting nerve root compression requiring him to undergo the further neck surgery described in Finding of Fact Number five herein above.
14. Even assuming arguendo that plaintiff's welding work was a significant contributing factor in development of the disabling nonunion of the earlier fusion at the C5-C6 level of his lumbosacral spine requiring him to undergo further surgery; the same injury was neither the result of a specific traumatic incident occurring at a cognizable time nor an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences; but rather, occurred after he returned to the same welding job that he had held for the past seven years and occurred without specific incident or injury. In fact, there is no evidence of any specific work-related injury occurring at any cognizable time after he returned to work in April of 1992 resulting in the disabling neck injury requiring additional surgery nor does plaintiff claim one. Further again there is no credible evidence that plaintiff's employment as a welder placed him at an increased risk of the neck condition requiring additional surgery as compared to members of the general public and other employments at large.
************
Based upon the foregoing stipulations and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. For the reasons stated in the above Findings of Fact, the disabling neck condition twice requiring plaintiff to undergo corrective surgery was neither the result of a compensable injury by accident nor an occupational disease due to causes and conditions that are characteristic of and peculiar to his employment as a welder, but excluding all ordinary diseases of life to which the general public is equally exposed outside of that employment.
Plaintiff's testimony, and other evidence, which if believed, would tend to establish that the same problems are the result of a compensable injury or occupational disease is not accepted as credible.
Concerning the credibility of a witness in a Workers' Compensation proceeding, Judge Hedrick, speaking for the Court of Appeals Blalock vs. Roberts Company, 12 N.C. App. 499 stated:
"The Commission is the sole judge of the credibility of the witness and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part. Robbins vs. Nicholson, 10 N.C. App. 421,179 S.E.2d 183 (1971); Morgan vs. Furniture, Inc., 2 N.C. App. 126,162 S.E.2d 619 (1968), and Anderson vs. Motor Company, 233 N.C. 372,64 S.E.2d 265 (1951). The Commission has the duty and authority to resolve conflicts in the testimony of a witness or witnesses. If the findings made by the Commission are supported by competent evidence, they must be accepted as final truth.Rooks vs. Cement Company, 9 N.C. App. 57, 170 4th S.E.2d 324 (1970); Petty vs. Associated Transport, 4 N.C. App. 361, 167 S.E.2d (1968)."
2. In December of 1991 plaintiff injured his neck lifting a piano at church resulting in the disabling cervical disc herniations initially requiring corrective neck surgery and upon subsequently returning to his regular welding job following surgery, but without specific or injury occurring at a cognizable time, plaintiff had a recurrence of his neck symptoms requiring further neck surgery because of a nonunion of one of the levels fused at the time of his initial neck surgery.
*************
Based on the foregoing findings of fact and conclusions of law the Full Commission enters the following
AWARD
1. Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear their own costs.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ JAMES J. BOOKER COMMISSIONER
S/ _________________ DIANNE C. SELLERS COMMISSIONER
BSB:md