The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 44 years old, with a date of birth of November 7, 1949. For his education, plaintiff had completed high school. For his work history, plaintiff had worked for defendant for approximately 22 years, from August 1970 through February 1993. Defendant is in the business of selling electrical supplies. Plaintiff worked primarily at the sales counter where he would serve customers. In this job customers would order items at the counter, and plaintiff would retrieve the items and often load the items for customers.
2. Plaintiff had an extensive medical history, including primarily problems with his back, his knees, and his kidneys. Plaintiff began having problems with his back when he was 14 years old. Over the course of 30 years, plaintiff's spine was almost completely fused by an arthritic condition known as ankylosing spondylitis. While in high school, plaintiff injured his left knee; and he suffered from continuous problems with his knees as a result of the injury and degenerative changes. Several surgeries were performed on plaintiff's knee, including a knee reconstruction which involved a replacement of the kneecap. Plaintiff suffered from continuous problems with kidney stones. Plaintiff passed between 50 and 100 kidney stones per year and had undergone two surgeries to his kidneys to remove stones. In addition to the above-noted health problems, plaintiff suffered from hypertension, tendinitis of the right shoulder, tendinitis of the right wrist, gout and iritis (treatment for iritis was given by an ophthalmologist).
3. In 1992, the year before he left work with the defendant, plaintiff was seen a few times at the UNC Rheumatology Clinic; and throughout the year plaintiff had prescriptions for pain medications. In March-April 1992 plaintiff was admitted to Forsyth Memorial Hospital following an attempted suicide when he took 30 Darvocet N-100 tablets. At the time of his admission plaintiff reported pain in his left flank, with an intensity which was eight on a scale of ten (with ten being the worse pain); and plaintiff reported that the pain was relieved by taking Demerol. The reason plaintiff gave for his attempted suicide was that his third wife had threatened to leave him after she found out that he had not divorced his second wife and she "found out other inaccuracies in some things she [the wife] had been told by him [plaintiff]. . . . . .". On December 17, 1992 (one month before the incidents which are the subject of this claim) plaintiff returned to UNC Rheumatology Clinic with a complaint of increased back pain with no injury. Dr. Yount performed two trigger point injections to relieve back pain.
4. In his job at the sales counter with defendant, plaintiff was paid at Pay Grade Seven which is the highest pay grade for the position. A job in defendant's warehouse was a position at Pay Grade Eight; and plaintiff agreed to accept the warehouse position, which would be a promotion. The job in the warehouse was substantially similar to his job at the sales counter. In his job on the counter, plaintiff would perform the warehouse job during slow periods. The merchandise plaintiff carried at the warehouse was the same as the merchandise he carried to the sales counter. The job in the warehouse was not one of continuous lifting, but plaintiff would be away from the warehouse at times when making deliveries.
5. The warehouse job was offered to plaintiff on January 8, 1993 (Friday). On Sunday plaintiff called his supervisor to ask for Monday as a day off, which was allowed. Plaintiff did not work on Monday, (January 11, 1993), and on Tuesday (January 12, 1993), plaintiff took the afternoon off. Plaintiff was out of work on Wednesday (January 13, 1993). He worked half a day on Thursday (January 14, 1993), and he worked a full day on Friday (January 15, 1993).
6. On Thursday (January 14, 1993) plaintiff reported to his supervisor that his knee was hurting, and plaintiff lifted his pant's leg to show the supervisor the condition of his knee. Plaintiff left work at lunch. The next day (Friday, January 15, 1993), plaintiff worked a full day. That night, plaintiff called defendant's manager at home and reported that he was having problems with his knee. Plaintiff attributed the knee problems to continuous walking at work. On Monday (January 18, 1993), plaintiff met with his supervisor and defendants' manager. Plaintiff reported both problems with his knee and with his back. While the supervisor and the manager stated that plaintiff only reported knee problems, they were mistaken: Plaintiff's primary complaint was knee problems, but he also mentioned his back. The manager prepared a written request for medical treatment after the Monday meeting; and in the request, the manager mentioned both back and knee problems. Although plaintiff did report back problems on Monday, he did not report any specific event. No specific event was stated in the medical request; and plaintiff did not prepare any accident report, although he had had several workers' compensation accidents in the past and would be familiar with reporting requirements.
7. Regarding the events during the week of January 11, 1993, plaintiff has given several different versions which are not consistent and cannot be reconciled. Plaintiff did not initially report any specific event to his supervisors. Plaintiff reported to Dr. Yount on Tuesday (January 19, 1993) that he injured his neck lifting conduits. In his recorded statement with an insurance adjuster, plaintiff reported that neck pain was caused by continuous lifting of a load of conduits. In his Notice of Accident (Industrial Commission Form 18, which was witnessed by Dr. Yount) plaintiff reported low back and neck pain which was caused by "repetitive lifting of conduit" and "loading and unloading company trucks of conduit." In his answers to Interrogatories, plaintiff reported two incidents occurring on January 14, 1993 and January 15, 1993 when he heard a loud pop and felt pain in his neck.
8. Plaintiff testified to the following: On Thursday (January 14, 1993), between 10:00 a.m. and 11:00 a.m., plaintiff was lifting a conduit from a truck to his shoulder, and he felt a sharp pain in his low back and left leg. Plaintiff did not report this incident immediately to his supervisor because the low back pain felt like he was passing a kidney stone. Later in the day plaintiff realized the pain was different than when passing a kidney stone; and sometime in the afternoon, before 5:00 p.m., he reported the incident to his supervisor. This version of events is not accepted by the undersigned as either credible or convincing.
9. Plaintiff did not work the full day on Thursday (January 14, 1993), but he left work at noon. When asked about the second incident which he described in his Interrogatories, plaintiff reported that his back continuously popped, and he usually experienced pain when it popped. Dr. Hayes was of the opinion that plaintiff injured a joint in his neck lifting conduits, although plaintiff testified to low back and left leg pain. Because of inconsistencies in plaintiff's reports and his testimony and because of his complicated medical history, the undersigned find that there is insufficient convincing or credible evidence of record from which the undersigned can infer from its greater weight that the plaintiff injured his back during a cognizable time while performing his assigned job duties.
10. After the examination by Dr. Yount on January 19, 1993, plaintiff was excused from work by Dr. Yount. He returned to work for defendant about two weeks later at a sedentary position. Plaintiff left work for defendant on February 15, 1993 and has not returned to work for defendant since that time. As part of a Wage Continuation Plan, defendant paid plaintiff his full salary for six months, through mid-August 1993.
11. Plaintiff returned to work on or about June 17, 1993 for a different employer, Spevco, Inc., a company which designs and builds specialty trucks. Plaintiff had met the manager of Spevco when he worked for defendant. The job with Spevco was as a general laborer, and the duties for this job included some strenuous labor, including carrying drums of hydraulic oil, carrying steel beams, carrying buckets of water, and washing trucks. Plaintiff did not complain of physical problems while performing the job, although the manager knew that the plaintiff had some back problems because of the way he carried his neck.
12. After a month with Spevco, plaintiff's performance was evaluated. In all areas of work, plaintiff was evaluated as excellent; and he was given a raise from $6.00 to $7.00 per hour. Plaintiff was later promoted to a position in Spevco's Purchasing Department. Plaintiff ordered material which he was not authorized to order, and he was warned not to order the material again. When plaintiff ordered the material a second time, he was fired for insubordination. Plaintiff testified that he did not remember the reason that he was fired from Spevco. If plaintiff had not been fired for insubordination, he could have continued to work at this job through the date of the hearing.
13. During the time that plaintiff worked for Spevco, he continued to receive his full salary from defendant as a disability benefit. Plaintiff did not tell defendant of his employment, and he collected both salaries from defendant and Spevco.
14. Plaintiff left Spevco in August 1993 and started to work for Modern Chevrolet in September 1993. After three weeks, plaintiff was fired. Plaintiff testified that he was fired because he had too many doctor appointments. During September 1993 plaintiff had one appointment with Dr. Yount and one appointment with Dr. Hayes. Plaintiff did not tell defendant of his job with Modern Chevrolet.
15. At the time of the initial hearing, plaintiff was working for Calloway, Johnson, Moore and West, an architectural firm. In this job plaintiff read electrical submittals. Plaintiff testified that he worked from ten to twenty hours per week for $13.00 per hour, but he did not expect for this job to continue.
16. For 22 years plaintiff had a second job, in addition to his job with defendant, reviewing invoices for Johnson Modern Electric. At the time of the initial hearing plaintiff continued to work at this job. Plaintiff testified that he worked 45 minutes to one hour per week at this job and earned $75.00 per week.
17. Since January 1, 1993 defendant has provided a disability plan for its employees which is fully funded by the employer. Pursuant to this plan plaintiff has received 60 percent of his wages from the time his salary continuation ended in August 1993 through the date of the initial hearing. The disability has been paid during times that plaintiff was working.
18. The undersigned find that plaintiff's testimony was neither credible or convincing as to an alleged specific traumatic incident. The finding is based on inconsistencies noted above and is further based on the following:
 a. In the summer of 1993 plaintiff did not tell his doctors that he was working, when he was performing a job which was quite strenuous. When plaintiff did tell Dr. Yount that he was working, he reported that it had been a job which was sedentary. Plaintiff also told Dr. Young that his job with defendant was sedentary before he was forced to work in the warehouse, although his prior job was equally strenuous.
 b. Plaintiff told Dr. Hayes that his physical problems were minimal before January 1993, although he had undergone trigger point injections only one month before.
 c. Plaintiff testified that he was forced to take the job in the warehouse, although the job was a promotion and in his recorded statement he referred to it as an "advancement" with no indication that he was forced to take it.
 d. On his application for employment with Spevco, plaintiff reported that he had graduated from Georgia Tech, and he told Dr. Yount that he had graduated from Appalachian State. Plaintiff had no college education.
 e. In his answers to Interrogatories plaintiff described his hospitalization in March 1992 was caused by a bad reaction to medication, when it had actually been following a suicide attempt.
 f. Plaintiff told Dr. Hayes that he had injured his neck lifting conduits, although he testified that he injured his low back. (Dr. Hayes based his opinion on plaintiff's description of a neck injury.)
* * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSION OF LAW
1. On January 14, 1993 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer, in that he did not injure his back as a result of a specific traumatic incident while performing his assigned job duties. N.C.G.S. 97-2 (6).
It is well established that the Industrial Commission is the sole judge of credibility and weight to be given the testimony at hearing, and may accept or reject any or all of the testimony of a witness. Blalock v. Roberts Co., 12 N.C. App. 499,183 S.E.2d 827 (1971). Although the Full Commission has the power to review determinations made by its Deputy Commissioners on the credibility of witnesses, the hearing officer is the best judge of the credibility of witnesses because he is the firsthand observer of the witnesses whose testimony must be weighed and then accepted or rejected. Pollard v. Krispy Waffle # 1, 63 N.C. App. 354,304 S.E.2d 762 (1983). Finally, it is noted that the Industrial Commission has the duty and authority to resolve conflicts in the evidence, and the conflicts need not be resolved in favor of the claimant. Cauble v. Macke Co., 78 N.C. App. 793, 338 S.E.2d 320
(1986). Plaintiff's testimony can neither be accepted as credible or convincing as it relates to an alleged specific traumatic incident, due to the numerous inconsistencies noted in the above findings of fact.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay their own costs, except that defendants shall pay an expert witness fee in the amount of $200.00 to Dr. John Wolfe, $250.00 to Dr. John Hayes and $600.00 to Dr. William Yount.
This the __________ day of ______________________, 1995.
 S/ _______________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________________________ J. RANDOLPH WARD COMMISSIONER
S/ _______________________________ DOUGLAS BERGER DEPUTY COMMISSIONER
JHB/nwm