The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
As aforementioned, all stipulations contained in the Pre-Trial Agreement are incorporated herein by reference.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon all of the competent evidence adduced at the hearing, the undersigned makes the following additional
FINDINGS OF FACT
1. Plaintiff is a 42 year old married female, previously employed in the meat department of defendant-employer, who on July 1, 1991 sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she slipped on the floor injuring her buttocks and low back.
2. Following this accident, on July 3, 1991, plaintiff was seen at High Smith Rainey Hospital in Fayetteville for complaints of right back and hip pain. Diagnosis was musculoskeletal strain.
3. Thereafter, the plaintiff came under the treatment of Dr. Kouba, an orthopedist, for her complaints of low back pain. Dr. Kouba prescribed conservative treatment for plaintiff's condition referring her to physical therapy. Plaintiff was not treated for any complaints of neck, arm or shoulder pain following the July 1, 1991 injury.
4. As stipulated, as a result of her lower back strain occurring on July 1, 1991, plaintiff was out of work from July 10, 1991 through August 18, 1991, a period of five and five-sevenths weeks. Plaintiff received compensation benefits for said period in the amount of $990.51 based upon an inaccurate average weekly wage figure of $260.00. However, when using the correct average weekly wage of $244.86 as stipulated to by the parties in the Pre-Trial Agreement, plaintiff should have received $932.86.
5. Plaintiff's condition improved following her treatment with Dr. Kouba although she voluntarily canceled the physical therapy, thereby not attending all the scheduled sessions. Upon plaintiff's return to work on August 19, 1991, although plaintiff continued to experience intermittent exacerbations of pain in her low back, plaintiff did not seek any additional medical treatment after her release to return to work by Dr. Kouba for low back pain or for any cervical back problems. Furthermore, following her return to work in August 1991, in addition to working her regular shift and performing her regular work duties with defendant-employer, plaintiff also continued working as the manager for a band until sometime in September 1991.
6. On August 26, 1992 during the course of her employment with defendant-employer, plaintiff was lifting a box of hams when she experienced the onset of pain in her lower back.
7. Thereafter, on April 30, 1992, plaintiff sought medical treatment for complaints of low back pain at Cape Fear Valley Hospital. When seen on April 30, 1992, plaintiff was complaining of low back pain radiating into her left leg following lifting the box of hams on April 26, 1992. There was no mention in the hospital medical notes regarding plaintiff complaining of pain in the neck, arms or shoulder nor was there mention of "pain going to the top" of plaintiff's head.
8. Plaintiff was referred to Dr. Kouba, who first saw plaintiff following the April 26, 1992 incident on May 14, 1992. At that time, plaintiff again related a history of the onset of pain in her low back radiating into her left leg when she bent over to pick up the hams on April 26, 1992. Again, plaintiff did not relate any complaint of pain in the cervical area or pain radiating down her arm or into her head. Dr. Kouba referred plaintiff for an MRI evaluation of the lower back which was unremarkable.
9. On June 1, 1992 plaintiff was again seen by Dr. Kouba for her continuing complaints of low back and leg pain. Plaintiff was referred for an EMG evaluation of the leg which was normal and during this visit, Dr. Kouba again received no complaints of pain which would be associated with a cervical spine disorder. Dr. Kouba referred plaintiff to physical therapy for her continuing complaints of low back pain.
10. When reseen by Dr. Kouba on June 11, 1992 for her continuing low back complaints, plaintiff again failed to mention any cervical problems.
11. On July 13, 1992, the plaintiff was again seen by Dr. Kouba for her continuing complaints of low back and leg pain. Due to these continuing complaints, Dr. Kouba felt plaintiff may have a disc problem and referred plaintiff to Dr. Rice for consideration of discography of the lower back.
12. Between her visits for Dr. Kouba on June 11 and July 13, 1992, plaintiff had sought emergency medical treatment in Myrtle Beach, South Carolina on June 19, 1992. Again, plaintiff was seen on this occasion due to complaints of lower back pain, the diagnosis being lumbar strain. There was no notation regarding plaintiff complaining of neck or arm pain on that occasion.
13. After Dr. Kouba resumed his treatment of plaintiff in May 1992, he never received a complaint from plaintiff regarding head, arm or shoulder pain which would be associated with a cervical spine problem.
14. The medical evidence of record reveals that plaintiff first mentioned experiencing some neck and arm symptoms when seen by Dr. Rice on July 17, 1992. Although plaintiff complained of some neck and arm problems at that time, examination of plaintiff's neck on July 17, 1992 revealed that plaintiff possessed a full range of neck motion.
15. On August 10, 1992, plaintiff saw Dr. Pennick, who had been recommended to plaintiff by a friend. Plaintiff related a history to Dr. Pennick of experiencing the onset of neck and shoulder pain as well as low back pain when she picked up the box of hams on April 26, 1992. Dr. Pennick referred plaintiff for a cervical MRI which was performed on August 10, 1992 revealing a small disc herniation at the C5-6 level. Dr. Pennick also reviewed the MRI of plaintiff's lumbar spine which had previously been performed and concurred with Dr. Kouba that the lumbar MRI was unremarkable.
16. Thereafter, Dr. Pennick continued to treat plaintiff conservatively for both her cervical and lower back conditions. He did not feel that plaintiff was a surgical candidate. On January 24, 1993, plaintiff was seen by Dr. King, a specialist in neurological surgery, for a second opinion. Based on his examination of plaintiff, Dr. King felt that plaintiff had reached maximum medical improvement and could return to work as of February 1, 1993 with a restriction of no repetitive lifting over twenty pounds. This restriction placed on plaintiff by Dr. King considered all of plaintiff's back complaints including her cervical spine complaints. Dr. King also felt that plaintiff may have mild arthritis as her sedimentation rate was elevated and further opined that plaintiff should not be prescribed additional narcotic medications.
17. Plaintiff was then seen by Dr. Keranen, a neurosurgeon, on January 25, 1993. Dr. Keranen based upon his evaluation of plaintiff was unable to specify a diagnosis for plaintiff's conditions or voice any opinion regarding plaintiff's complaints.
18. A repeat MRI of the cervical spine performed on January 28, 1993 showed a broad based protrusion on both sides of C5-6 level which represented a change from the MRI finding which was performed in October 1992.
19. Dr. Pennick, thereafter, referred plaintiff to Dr. Atassi for an opinion regarding consideration of surgery to correct the ruptured cervical disc. Dr. Atassi saw plaintiff on March 10, 1993 and received a history from plaintiff that she experienced the immediate onset of pain in the lower back as well as pain between her shoulders and neck at the time of the lifting of the hams incident on April 26, 1992. Based upon that history, Dr. Atassi felt that plaintiff's cervical problem could be related to said incident. However, it is noted that Dr. Atassi's opinion was necessarily based upon the history related to him by plaintiff.
20. Dr. Atassi scheduled plaintiff for cervical surgery in April 1993; however, following the plaintiff's hospitalization for said surgery, plaintiff changed her mind and left the hospital. Plaintiff has not yet undergone cervical surgery. As regards plaintiff's cervical back condition, even without surgery, when plaintiff was seen by Dr. Atassi, she was capable of returning to work not requiring lifting greater than twenty-five pounds. Dr. Atassi opined that plaintiff had sustained a 10% permanent partial disability rating to her back as a result of her cervical problems if she elected to not undergo back surgery. Dr. Pennick agreed with Dr. Atassi's rating. As regards plaintiff's complaints of low back pain, Dr. Atassi based on the objective medical findings, placed no restriction on plaintiff's work activities.
21. Defendant-employer provided work to plaintiff within her capacity as a cashier which did not involve repetitive lifting over twenty pounds as of February 1, 1993.
22. Plaintiff returned to work for defendant-employer as a cashier on February 1, 1993. However, after approximately thirty minutes, plaintiff ceased working and sought medical treatment at Cape Fear Valley emergency room regarding complaints of pain in her cervical and low back.
23. When assessing plaintiff's demeanor during her testimony and in light of the other evidence of record which failed to corroborate plaintiff's testimony, the Deputy Commissioner deemed plaintiff's testimony regarding the onset of neck and shoulder pain at the time of the lifting incident on April 26, 1992 not credible or convincing. As Dr. Pennick's and Dr. Atassi's opinions regarding the causal relationship between the cervical disc herniation for which they treated plaintiff are based on the inaccurate history related to them by plaintiff, said opinions are not controlling in this matter. Rather, the Deputy Commissioner found and the undersigned now also find that the credible and convincing history is the one plaintiff reported to Dr. Kouba that the plaintiff did not experience the onset of any symptoms related to her cervical spine following the April 26, 1992 incident until approximately the time that she saw Dr. Rice in July 1992.
24. Furthermore, when assessing plaintiff's demeanor at the hearing, the Deputy Commissioner found that plaintiff's testimony that she experiences pain of a disabling nature attributable to her low back and cervical spine problems in light of the other evidence of record was likewise not deemed credible or convincing.
25. As a result of the admittedly compensable injury by accident plaintiff sustained during the course of her employment with defendant-employer on April 26, 1992, plaintiff suffered an acute lumbosacral strain. By February 1, 1993, plaintiff had recovered from this condition and was capable of returning to the work provided her by defendant-employer as a cashier. The medical evidence does not support a finding of plaintiff sustaining any permanent partial disability to her lumbar spine as a result of said injury by accident.
26. The condition of plaintiff's cervical spine, which necessitated the treatment rendered plaintiff by Drs. Pennick and Atassi, including proposed surgery, was neither caused, aggravated, accelerated or significantly contributed to by the on-the-job injury of April 26, 1992 or the on-the-job injury of July 1, 1991.
* * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. On July 1, 1991 and April 26, 1992, the plaintiff sustained injuries by accident arising out of and in the course of her employment with defendant-employer when she sustained injuries to her low back as a result of the specific traumatic incidents of the work assigned. Plaintiff has not sufficiently or convincingly proven that the cervical spine condition for which she sought medical treatment beginning in July 1992 resulted from the injuries by accident she sustained during the course of her employment with defendant-employer on July 1, 1991 or April 26, 1992. G.S. § 97-2(6); Hill v. Hanes Corporation,102 N.C. App. 46, 401 S.E.2d 768, affirmed 33 N.C. 189 (1991).
2. As a result of the injury by accident she sustained on July 1, 1991, plaintiff was temporarily totally disabled from July 10 through August 18, 1991 and has received all of the temporary total disability compensation benefits she is entitled to from defendants for said disability. G.S. § 97-29.
3. As a result of the injury by accident plaintiff sustained on April 26, 1992, plaintiff was temporarily totally disabled from May 15, 1992 through January 31, 1993. Defendants have paid temporary total disability compensation benefits to plaintiff for said temporary total disability except for a period of two days from October 29, 1992 through October 30, 1992. Therefore, plaintiff is entitled to temporary total disability compensation benefits for said two day period at the rate of $190.67, subject to a credit awarded defendants for overpayment of compensation benefits paid to plaintiff in Industrial Commission claim number 155247. As the low back injuries which plaintiff received as a result of the accidents of July 1, 1991 and April 26, 1992 did not prevent her return to work for defendant-employer as of February 1, 1993, plaintiff has therefore, failed to sufficiently or convincingly prove a reduction in her earning capacity as a result of any injuries received in said accidents. G.S. § 97-29.
4. It is well established that the Industrial Commission is the sole judge of credibility and weight to be given the testimony at hearing, and may accept or reject any or all of the testimony of a witness. Blalock v. Roberts Co., 12 N.C. App. 499, 183 S.E.2d 827 (1971). Although the Full Commission has the power to review determinations made by its Deputy Commissioners on the credibility of witnesses, the hearing officer is the best judge of the credibility of witnesses because he is the firsthand observer of the witnesses whose testimony must be weighed and then accepted or rejected. Pollard v. Krispy Waffle # 1, 63 N.C. App. 354,304 S.E.2d 762 (1983). Finally, it is noted that the Industrial Commission has the duty and authority to resolve conflicts in the evidence, and the conflicts need not be resolved in favor of the claimant. Cauble v. Macke Co., 78 N.C. App. 793, 338 S.E.2d 320
(1986).
5. Plaintiff is entitled to have defendants provide all medical treatment for plaintiff's low back condition resulting form the injuries by accident plaintiff sustained on July 1, 1991 and August 26, 1992. G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
ORDER
1. Plaintiff's claim for further worker's compensation benefits pursuant to the provisions of the North Carolina Workers' Compensation Act is hereby DENIED.
2. Defendants shall pay expert witness fees in the amounts of $200.00 to Dr. Kouba, $250.00 to Dr. Pennick and $250.00 to Dr. Keranen.
3. Each side shall pay its own costs.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1996.
 S/ ______________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ______________________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________________ DIANNE C. SELLERS COMMISSIONER
JHB/nwm 06/20/96