The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Defendant-employer is self-insured with Sedgwick of the Carolinas as the servicing agent.
4. The parties stipulated to a Form 22, setting forth the average weekly wage of plaintiff.
5. The entire contents of the Industrial Commission file in this case, including all medical records and reports and all completed Industrial Commission forms, were stipulated into evidence.
6. The following medical reports, in addition to those contained in the Industrial Commission file, were stipulated into evidence:
 a. Forensic psychiatric evaluation of plaintiff conducted by Dr. Bob Rollins. (12 pp.)
 b. Package of medical reports submitted by defendant's counsel on 24 July 1996.
7. The issues for determination are:
 a. Whether plaintiff sustained an injury by accident by way of specific traumatic incident arising out of and in the course of his employment;
b. To what, if any, benefits is plaintiff entitled
************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the date of the hearing, plaintiff was a forty-eight year old male high school graduate. He is married and lives with his fourth wife. Plaintiff is 5'11" tall and weighs 190 pounds. Prior to his back problems in April 1994 plaintiff had not been treated by a physician except to have a cyst excised approximately three years ago. After high school, plaintiff obtained further education through military service and earned a bachelor of science degree in electronic engineering. In February 1994 plaintiff began working for defendant-employer, where he worked until 15 April 1994 as a car salesman.
2. Plaintiff's wife has custody of two children from a prior relationship and the couple has two children from the marriage. Plaintiff's three children from his third marriage reside with their mother.
3. On 15 April 1994, plaintiff arrived at work early and wanted to continue to work on a particular vehicle sale contract. Plaintiff could not find the contract and he went into the office of his sales manager's office to search for the contract. The sales manager's office was a small, carpeted room off the sales tower. It is plaintiff's allegation that while he was in the sales manager's office he slipped on some BB shots which were lying on the floor. Plaintiff alleges that his feet slipped out from under him and he fell backwards across a metal chair, turning it over, and struck his back, kidney and lumbar areas. Plaintiff claims that after he fell to the floor he was unable to move or to rise and that some time thereafter co-employee Robert Turbyfill happened to come into the room.
4. Mr. Turbyfill arrived at work at approximately 8:00 a.m. on the morning of 15 April 1994 and observed plaintiff's arrival some fifteen minutes later. Plaintiff had been acting as Mr. Turbyfill's mentor. Among other advice which plaintiff gave Mr. Turbyfill was that he should always wear rubber-soled shoes to avoid slipping and falling. Plaintiff, although he initially denied wearing rubber-soled shoes on 15 April 1994, admitted that he could have done so. Mr. Turbyfill entered the sales tower area and found plaintiff on the floor in the sales manager's office, although he had not heard plaintiff fall or cry out. At the time Mr. Turbyfill spotted plaintiff on the floor, all of the chairs in the sales manager's office were in an upright position.
5. Mr. Turbyfill attempted to lift plaintiff to his feet, but plaintiff stated that he was in so much pain that he could not get up. Plaintiff was able to get up with assistance and was eventually taken to Wilkes Regional Hospital in North Wilkesboro. At the hospital, plaintiff was diagnosed with a contusion/strain to the lower back and placed on pain medication and muscle relaxants. X-rays performed at Wilkes Regional Hospital revealed mild degenerative changes of the lumbar spine, but were otherwise negative. There is no notation of lacerations or bruising to plaintiff's back in the medical records. Plaintiff was released in "good" condition.
6. On 19 April 1994, plaintiff saw Dr. David D. Kim, a general and vascular surgeon. Plaintiff complained of tenderness in the lumbar area and of pain radiating down his right leg. Dr. Kim found no evidence of laceration, bruising or muscle spasm. Plaintiff returned to Dr. Kim on 25 April 1994 with continued complaints of low back pain and of pain radiating down his right leg. Dr. Kim ordered an MRI of the lumbar spine which was performed in part on 9 May 1994. The MRI revealed a left paracentral disc herniation at L4-5. Plaintiff returned to Dr. Kim on 12 May 1994 after having one-half of the MRI performed. On this visit, and for the first time, plaintiff complained of pain radiating down his left leg.
7. Dr. Kim wrote a letter on 31 May 1995 to plaintiff's attorney in which he stated that plaintiff had sustained a herniated lumbar disc as seen on a CT scan. Dr. Kim further stated in his letter that plaintiff's back injury was consistent with a fall while at work as related to him by plaintiff. Based upon plaintiff's history, CT scan and physical examination, Dr. Kim, at the time, stated that plaintiff's injury was work-related.
8. In preparation for his deposition of 30 August 1995, Dr. Kim reviewed plaintiff's medical history and treatment records and noticed that plaintiff had first complained of pain radiating down his right leg and subsequent to the MRI which demonstrated a left paracentral disc herniation at L4-5, complained for the first time of pain radiating down the left leg. At the time of the deposition, Dr. David Kim could not state, with any degree of medical certainty, that plaintiff's back condition was the result of a work-related injury.
9. Dr. Kim referred plaintiff to Dr. J.M. McWhorter, a neurosurgeon and on 3 June 1994, plaintiff presented to Dr. McWhorter for a physical examination. Plaintiff informed Dr. McWhorter that he had injured his back at work and that the pain had gotten worse and had begun to radiate into his left leg. The physical examination revealed no abnormalities. However, the examination was noteworthy due to inconsistencies in reported pain from straight leg raising conducted in both supine and sitting position. Although plaintiff complained of pain when supine, he did not complain of pain when asked to extend his leg in the sitting position. Dr. McWhorter wrote to Dr. Kim on 3 June 1994, noting he had no objective findings other than a diminished range of motion of plaintiff's lumbar spine and a bulging disc at L4-5 on the left side as visible on the MRI arranged by Dr. Kim. Dr. McWhorter recommended continuation of conservative treatment. He also prescribed a course of physical therapy and pain medication, anti-inflammatories and muscle relaxant (Vicodin, amitriptyline and Lodine).
10. Plaintiff began physical therapy at Wilkes Regional Medical Center on 7 June 1994. Plaintiff underwent four subsequent physical therapy treatments and finally returned to Dr. McWhorter. After a physical examination on 21 October 1994, Dr. McWhorter noted that plaintiff's motor and sensory examinations were normal, his reflexes were equal and that there were no pathologic reflexes elicited. Plaintiff had no paravertebral muscle spasm. Because of plaintiff's continued complaints of pain, Dr. McWhorter recommended a lumbar myelogram. The myelogram was not authorized by the carrier. Plaintiff did not consult Dr. McWhorter again and subsequently moved to Rowan County.
11. On 22 December 1994 plaintiff presented to Dr. William T. Mason, an orthopaedic surgeon and to Dr. Stephen Furr with Centralina Orthopaedics and Sports Medicine Clinic in Salisbury. Dr. Mason's physical examination in December revealed generalized pain in plaintiff's lumbar area mid-line L4-S1 along with pain in mid-right and left paralumbar regions. Objective testing of reflexes and motor sensation were normal but plaintiff had positive straight leg raising bilaterally and difficulty getting on and off the examination table secondary to expressed pain. Dr. Mason diagnosed plaintiff as having a lumbar strain which had aggravated pre-existing osteoarthritis of the facet joints in the lumbar spine. Dr. Mason wished to review the MRI scan report. Plaintiff went to the hospital emergency room on 4 April 1995 for lower back pain.
12. Plaintiff was next seen by Dr. Furr of Centralina Orthopaedics on 1 May 1995. Dr. Furr reviewed plaintiff's MRI and arranged for plaintiff to undergo epidural steroid injections by Dr. Eva Nelson. On 22 May 1995 plaintiff returned to Dr. Furr with some improvement and resolution of back pain with the epidural injections.
13. According to Dr. Furr's deposition, plaintiff's osteoarthritis may not have been symptomatic until April 1994 and Dr. Furr's examination of plaintiff was consistent with a paracentral left disc herniation. Dr. Furr also arranged for plaintiff to undergo physical therapy at Rowan Memorial Hospital in an effort to decrease his symptoms. Despite the physical therapy and the epidural steroid injections given by Dr. Eva Nelson, plaintiff continued to complain of pain. Therefore, Dr. Furr referred plaintiff to Dr. Lyerly, a neurosurgeon.
14. Dr. Furr's precise diagnosis of plaintiff consisted of the following: (a) pre-existing osteoarthritis of his back; (b) paracentral disc herniation at L4-L5 affecting primarily the left and (c) pericapsular axial muscular strain to the lumbar spine.
15. On 22 June 1995 plaintiff saw Dr. Lyerly and complained of low back pain, left thigh pain and intermittent left arm pain radiating down in a predominant C5-C6 dermatomal pattern. Dr. Lyerly could not account for plaintiff's leg pain and intermittent left arm pain by virtue of viewing the MRI furnished by Dr. Kim. Dr. Lyerly recommended that plaintiff undergo a cervical myelogram followed by a post-myelogram CT-scan to rule out a herniated nucleus pulposus. Both tests were prepared on 27 June 1995 and Dr. Lyerly reviewed the results with plaintiff. Dr. Lyerly diagnosed plaintiff as having a lateral bulge at L4-5 to the right, but no significant stenosis or evidence of herniated nuclear pulposus. A lateral bulge at L4-5 on the right did not account for ongoing left leg symptoms. Dr. Lyerly did not find any mechanical reasons for plaintiff's ongoing pain symptoms and recommended that plaintiff undergo nerve conduction studies.
16. According to Dr. Lyerly the MRI presented by Dr. Kim from Wilkes Regional Medical Center depicted an L-paracentral disc herniation which appeared to be an asymmetric bulge with no evidence of herniated nucleus pulposus or free fragment.
17. Dr. Lyerly opined that plaintiff, in accordance with a functional capacity evaluation, could perform a sedentary or light job.
18. On 7 September 1995 Dr. Lyerly diagnosed plaintiff with bilateral carpal tunnel syndrome but found no evidence of radiculopathy affecting plaintiff's left upper or lower extremities. Plaintiff wept when Dr. Lyerly informed him that there was no surgical option for his back pain. According to Dr. Lyerly, plaintiff's problems were psychosomatic in nature.
19. Plaintiff underwent a forensic psychiatry evaluation by Dr. Bob Rollins on 11 February 1996. Dr. Rollins reviewed plaintiff's medical reports and had plaintiff complete an MMPI. Dr. Rollins diagnosed plaintiff as having a chronic pain syndrome with psychological rather than physical etiology. Plaintiff was revealed by psychological testing and clinical evaluations to be a person with unmet dependency needs who developed incapacitation physical symptoms in order to assume an invalid role. Plaintiff's psychiatric elements can be characterized as Somatoform Disorder which is a condition consisting of physical symptoms suggesting medical conditions but which are not explained by medical condition. Plaintiff's pain disorder was not caused or aggravated by an injury in Dr. Rollins' view but his symptoms were triggered or precipitated by the alleged 15 April 1994 incident. Plaintiff had pre-existing conflicts regarding dependence and independence related issues. Plaintiff began to express the conflicts or only allowed himself to express the conflicts after he could account for them by virtue of an alleged accident. According to Dr. Rollins these pre-existing conflicts, emerged to produce in plaintiff, a symptom complex. This symptom complex caused plaintiff's invalidism and allowed him to avoid responsibility and to be cared for by others.
20. Plaintiff's testimony, and other evidence of record, which if believed would tend to establish that he suffered a disabling back injury on 15 April 1994, is not accepted as credible. Plaintiff's version of the incident in which he fell in the sales manager's office is inconsistent with the facts. First, the office is carpeted, making a slip on "BB" pellets unlikely. Second, plaintiff always wore rubber-soled shoes to avoid slipping. Third, the chair which plaintiff allegedly struck and which alleged caused him to have major soreness in his upper back remained upright and in a position unmoved from its usual place.
21. Plaintiff's testimony and the medical evidence of record, which if believed would tend to establish that he suffered a completely disabling and debilitating back injury to both lumbar and upper back and which has resulted in his inability to seek work or to work since 15 April 1994, is not accepted as credible. Plaintiff had no abrasions, contusions or bruises on his back when he reported to Wilkes Regional Medical Center Emergency Department or when he presented to Dr. Kim. There are inconsistencies in plaintiff's medical history such as his reported radiating pain to the right leg until the MRI demonstrated a left paracentral disc herniation. Moreover, Dr. McWhorter related positive supine straight leg raising but negative straight leg raising in the sitting position. No objective findings supported plaintiff's complaints of debilitating and ever worsening pain.
22. Plaintiff's complaints are exaggerated and atypical of a mild paracentral left disc herniation. In particular, plaintiff's limp and grimacing to physicians and at the hearing suggest symptom magnification not explicable by a medical condition. No nerve root compression was ever identified. Instead, plaintiff's symptoms are significantly magnified by emotional overlay and secondary gain factors consistent with the psychosomatic problem of chronic pain syndrome. Dr. Bob Rollins evaluated plaintiff as having a chronic pain syndrome explicable and caused by psychological rather than physical etiology.
************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's testimony and the other evidence of record, which if believed, would tend to establish that plaintiff sustained a disabling injury to his back by specific traumatic incident on 15 April 1994, are not accepted as credible. Judge Hedrick, speaking for the Court of Appeals in Blalock v. RobertsCompany, 12 N.C. App. 449 [12 N.C. App. 499], 504, 183 S.E.2d 827,832 (1971) stated:
 The Commission is the sole judge of the credibility of the witness and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part. Robbins v. Nicholson, 10 N.C. App. 421, 179 S.E.2d 183 (1971); Morgan v. Furniture Industries Company, 233 N.C. 372, 645 S.E.2d 265 (1951).
2. Plaintiff did not sustain an injury to his back by way of specific traumatic incident arising out of and in the course and scope of his employment with defendant-employer on 15 April 1994. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff suffers from a pain disorder associated with psychological factors. This disorder was not caused or aggravated by the alleged 15 April 1994 injury, but rather, the symptoms were triggered or precipitated by the alleged event. That is, the events allowed the expression of pre-existing conflicts regarding dependence-independence issues. These pre-existing conflicts have emerged to produce a symptom complex which causes invalidism and allows the secondary gain of avoiding responsibility and being cared for by others.
4. Plaintiff is not entitled to workers' compensation, medical or disability benefits as plaintiff's alleged fall at work only "triggered" or "precipitated" plaintiff's psychological condition and did not cause it. See, e.g. Brewington v. RigsbeeAuto Parts, 69 N.C. App. 168, 316 S.E.2d 336 (1984).
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for workers' compensation benefits, must be and hereby is DENIED.
2. Each side shall bear its own costs.
This the 9th day of July 1997.
 S/ __________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ WANDA BLANCHE TAYLOR DEPUTY COMMISSIONER
DCS:jmf