The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of the injury alleged.
3. Zurich-American Insurance Group was the carrier on the risk from February 23, 1993 through December 31, 1993.
4. Travelers Insurance Company was the carrier on the risk from January 1, 1994 forward.
5. The date of the alleged injuries are February 22, 1993 and January 26, 1994.
6. The following documents were stipulated into evidence:
a. Medical
1. Dr. Richards (5 pp.)
2. Dr. Garner (7 pp.)
3. Dr. St. Clair (12 pp.)
4. Wake Medical Emergency Center
5. Raleigh Urgent Care
6. Office note of Dr. Nelson dated May 19, 1995.
b. Supervisor's report dated December 9, 1993.
 c. Plaintiff's Responses to Defendants' Discovery Request.
d. Recorded statement of plaintiff.
e. Form 22.
* * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff was twenty-eight years old and married at the time of the initial hearing. He has had prior experience working as a diesel mechanic and with other mechanical pursuits. In May, 1991, he began working at Siemens. Plaintiff's job involved lifting plates from a table and installing them into a cubicle. The plates are thirty inches wide and have four holes in them. Plates are mounted on studs and can weigh up to 100 pounds. However, they average between fifty and sixty pounds.
2. On February 22, 1993, plaintiff was lifting and installing fifty to sixty pound plates into a cubicle. As he was lifting a plate from the table, plaintiff allegedly experienced pain in his back. Plaintiff stated he had never picked up plates previously, but on February 22, 1993 there was a backlog and the plates were stacked up on the floor. As he bent over to lift up a plate he felt pain and burning in his back as he lifted. Plaintiff stated that he reported his injury to his lead man who was busy on the floor.
3. Plaintiff stated that his supervisor, Dwayne Blakley, told him to go to pick up a form on which to report his injury from the plant office. However, plaintiff further stated that he was refused a form by the front office because his supervisor did not accompany him. Therefore, plaintiff stated that he left the premises because he was in such pain.
4. Neither Mr. Blakley nor anyone else from the plant office was subpoenaed to attend the hearing or was present on his own volition to corroborate the testimony of plaintiff.
5. Following plaintiff's alleged injury on February 22, 1993, he was treated by Dr. Robert D. Richards, his family physician. Plaintiff stated that he presented to Dr. Richards on February 22, 1993. However, Dr. Richards' office notes indicate the plaintiff was examined one day later on February 23, 1993. The medical history in Dr. Richards' office notes indicate that plaintiff presented complaining of low back pain radiating into both his thighs. According to the medical records, plaintiff had experienced a previous, similar episode six or seven months previously. Plaintiff denied at the initial hearing that he had ever experienced any back pain prior to February 22, 1993. Dr. Richards diagnosed plaintiff as having sustained muscle strain and prescribed three days of rest.
6. Plaintiff subsequently returned to work and did not receive any additional medical treatment until much later that year. Plaintiff, at the initial hearing, was certain that he had been examined by Dr. Allen Mask at the Raleigh Urgent Care Center in August or September, 1993. There are no records of such a visit. However, there are medical records indicating that plaintiff presented November 12, 1993 to Dr. Mask at the Raleigh Urgent Care Center with complaints of left hip pain. Medical records and history indicate the pain had been present for a year. There was no indication in the medical history of a back injury sustained on the job or of any work related injury which had occurred prior to the November 12, 1993 visit to Urgent Care. Plaintiff did however relate that he had been in a motor vehicle accident in 1991. Dr. Mask diagnosed plaintiff as having tendinitis or a strain in the left hip.
7. According to the 1993 Siemens' employee calendar, plaintiff missed four days of work for illness in 1993.
8. Plaintiff next presented to Wake Medical Center on December 6, 1993, complaining of back pain radiating into both legs. The medical history indicates that plaintiff had a history of intermittent low back pain for approximately one year with symptoms worsening in cold weather. While plaintiff reported heavy lifting at work, he specifically and clearly denied any knowledge of any trauma or any specific injury at work. The triage record indicates that plaintiff "denied any injury or trauma".
9. At the initial hearing plaintiff was unable to explain the inconsistency between his medical records and his testimony at trial.
10. On December 9, 1993, Dr. Richards re-examined plaintiff and authorized him to be out of work for at least two weeks. Dr. Richards' December 9, 1993 office note states the plaintiff had injured his back at work.
11. On December 9, 1993, plaintiff also notified defendant-employer of his alleged February 22, 1993 injury. Ms. Linda Dixon, a personnel analyst for defendant-employer who handles workers' compensation claims, completed a Supervisor's Accident Investigation Report with information from the plaintiff. At that time, on December 9, 1993, there was no other reference in the file regarding an injury sustained on February 22, 1993 by plaintiff.
12. On December 20, 1993, a Form 19 was completed. On January 20, 1994, defendant-carrier Zurich-American Insurance Group denied plaintiff's claim for the alleged work-related injury of February 22, 1993.
13. Plaintiff missed time from work in December, 1993 as a result of his back condition. He was paid short-term disability benefits by the defendant-employer from December, 1993 through February, 1994. The parties stipulated at the initial hearing as to the amounts of short-term disability benefits paid to plaintiff and to defendant-employer's entitlement to credit for those benefits against any workers' compensation benefits that may be owed.
14. Plaintiff indicated he gave physician notes to Billy Duran following his alleged February 22, 1993, injury. Plaintiff's personnel file, according to Ms. Dixon, did not contain any such notes. However, there was a note from Dr. Richards authorizing plaintiff to return to work on February 25, 1993. No reference was made in the note, however, to any work related injury. Upon receiving the plaintiff's report of alleged injury on December 9, 1993, Ms. Dixon contacted Dr. Richards. Dr. Richards' records contained no suggestion that plaintiff had suffered a workers' compensation injury prior to December, 1993.
15. On December 15, 1993, plaintiff presented to Dr. Timothy B. Garner, a neurosurgeon in Raleigh, North Carolina. At this time the records indicate that plaintiff told Dr. Garner that he had hurt his back initially in February. However, plaintiff could not recall any specific incident or inciting event which precipitated the injury. Plaintiff also told Dr. Garner he had injured his back a second time in October, 1993. At the initial hearing, plaintiff denied that he told Dr. Garner that he had reinjured his back in October, 1993.
16. According to plaintiff's 1993 employment calendar, plaintiff did not miss any time from work due to illness in 1993.
17. At a January 5, 1994 visit to Dr. Garner, plaintiff's condition had improved dramatically with medication, and he was having little or no pain. Dr. Garner did not believe plaintiff was a surgical candidate at that time, and plaintiff was authorized and did return to work for defendant-employer on January 5, 1994.
18. On January 26, 1994, plaintiff alleged he reinjured his back on the job at Siemens. The alleged injury of January 26, 1994, occurred when plaintiff was picking up a thirty inch plate from a cart, and the weight of the plate shifted. Plaintiff stated that he experienced pain in his back and down into both his legs, with more pain on the left side.
19. Two other employees of Siemens, according to plaintiff, were present when the incident occurred; however, plaintiff did not subpoena them, and no witnesses appeared to testify at the initial hearing.
20. Plaintiff was examined at Raleigh Urgent Care Center and referred to Dr. Garner.
21. Plaintiff presented to Dr. Garner on January 27, 1994, reporting an incident of the previous day. At that time plaintiff was interested in having surgery. Dr. Garner tried to convince plaintiff that surgery was not necessary at that time. Plaintiff revisited the Raleigh Urgent Care Center on January 28, 1994 and again on February 22, 1994. At that time, Dr. Garner suggested that surgical intervention should be considered.
22. Plaintiff, after February 22, 1994, sought treatment by Samuel K. St. Clair.
23. On February 3, 1994, plaintiff gave a recorded statement to Mark Harris, an employee at Travelers Insurance Company, with regard to his January 26, 1994 injury. When asked whether or not he had suffered back problems prior to January 26, 1994, plaintiff did not mention the injury which had allegedly occurred on February 22, 1993. Rather, plaintiff stated he had injured himself first on December 6, 1993. No claim has ever been asserted in writing to the company by plaintiff for a December 6, 1993, injury. However, when plaintiff was asked by Mr. Harris whether he had any back problems before December, 1993, he initially said no, then changed his answer to yes but did not mention any alleged injury of February 22, 1993.
24. Plaintiff was examined by Dr. St. Clair on February 7, 1994. Dr. St. Clair recommended a follow-up MRI and suggested if indicated by the MRI results, a lumbar-discectomy would be scheduled on February 11, 1994. Plaintiff subsequently changed his mind regarding surgical intervention, declined surgery, and was released on February 17, 1994 to return to light duty work, by Dr. St. Clair.
25. Plaintiff continued working without receiving any medical treatment until July 13, 1994. At that time he was re-examined by Dr. St. Clair, presenting with back pain and bilateral leg pain.
26. Surgery was scheduled for a second time in August, 1994, but once again canceled by plaintiff since he had not donated blood prior to the surgery.
27. After August, 1994, plaintiff began to seek treatment from Dr. Leonard T. Nelson, stating at the hearing that he had lost his trust in Dr. St. Clair. Plaintiff was first examined by Dr. Nelson on September 9, 1994 and a decompression and fusion surgery was suggested.
28. On October 26, 1994, Dr. St. Clair performed a decompression of the nerve roots at L5-S1 and Dr. Nelson performed fusion. Dr. Nelson continued to follow plaintiff's progress. In his deposition, Dr. Nelson stated that plaintiff was close to maximum medical improvement on May 10, 1995. On May 19, 1995, Dr. Nelson stated that plaintiff had reached maximum medical improvement and that he suffered a 30% permanent partial impairment of the lumbar spine. Such a permanent partial impairment rating to a portion of the spine is not acceptable according to the Rules of the Industrial Commission and is thus rejected.
29. Plaintiff has not returned to work since his decompressive laminectomy and fusion at L5-S1, with an iliac crest bone graft on October 26, 1994.
30. In his deposition, Dr. Nelson stated that he was not one hundred percent certain, but believed plaintiff had never recovered from the alleged February 22, 1993 injury at the time the alleged January 26, 1994 injury occurred. He thought the first incident (if it, in fact, occurred) predisposed plaintiff to having another injury, and that the second injury was exacerbation of the first alleged injury. Dr. Nelson further explained that in his view and in accordance with the medical records he reviewed, the alleged January 26, 1994 injury was the precipitating factor for the back condition ultimately necessitating surgery in October, 1994.
31. Plaintiff's testimony regarding an injury by accident arising out of and in the course of his employment with defendant-employer Siemens on February 22, 1993, is not accepted as credible, accurate, or convincing. Although plaintiff stated he reported the incident to his supervisor, and later filed a doctor's note with personnel, the personnel file was bereft of any notes from doctors regarding the work-related injury.
32. Plaintiff's medical records fail to reveal that plaintiff received treatment for a work-related back injury which occurred on February 22, 1993. Although plaintiff testified that he sought attention from Dr. Richards on February 22, 1993, Dr. Richards' stipulated medical records reveal plaintiff did not seek treatment until February 23, 1993. There is no indication in Dr. Richards' office notes to substantiate a claim of a work-related injury. Although plaintiff alleges he received additional medical treatment for his back injury from Dr. Allen Mask at the Raleigh Urgent Care Center in August or September, 1993, the medical records do not indicate any treatment during those months. Instead, the medical records indicate plaintiff sought treatment on November 12, 1993, complaining of left hip pain that had been present for one year. The records of Dr. Mask do not contain any indication of a work-related injury prior to that time. Rather, the plaintiff seems to attribute his symptoms to a motor vehicle accident in 1991.
33. When plaintiff next sought treatment at Wake Medical Center Emergency Room, he reported a history of intermittent low back pain for one year and made no suggestion that a work-related back injury had occurred. He specifically denied any injury or trauma that he could recall which occurred at work.
34. When plaintiff was re-examined by Dr. Richards on December 9, 1993, there was no indication in the medical history that plaintiff injured his back at work.
35. A close review of the credible and convincing medical evidence presented at the hearing and through the parties' stipulations, reveals that plaintiff has failed to satisfy his burden of proving by the greater weight of the evidence that he sustained an injury by accident on February 22, 1993.
36. Plaintiff's lack of credibility is based upon the following: his demeanor at the initial trial before the Deputy Commissioner; his inability to explain the inconsistencies between his testimony at the hearing and what the medical records reveal; the lack of documentation of plaintiff's assertions made at the hearing and in his medical records; and, the inconsistencies between plaintiff's recorded statements and his testimony at the hearing. All of the above serve to undercut plaintiff's credibility and veracity.
37. Plaintiff has alleged at various times a total of five back related injuries occurring between February 22, 1993 and December 6, 1993, none of which are supported in the medical records as being work-related. It is significant that there is no reference to a February 22, 1993, back related injury until after plaintiff's claim was denied by Zurich-American and until after plaintiff was first examined by Dr. Garner on December 15, 1993.
38. Since plaintiff did not sustain an injury by accident on February 22, 1993, the fact that he did not report the accident to his employer until December, 1993 is moot.
39. Zurich-American Insurance Group was the carrier on the risk on February 22, 1993 but not subsequent to December 31, 1993.
40. Travelers Insurance Company was the carrier on the risk beginning January 1, 1994 and was thus the carrier when plaintiff's alleged injury of January 26, 1994, occurred.
41. By December, 1993, plaintiff had a well documented history of lower back pain and strain. By December 10, 1993, he had a herniated disk at L5-S1. It was Dr. Nelson's testimony in his deposition that the herniated disk was in existence prior to January 26, 1994, the date of the alleged injury at work. Notably, the alleged incident occurred only six days after Zurich-American Insurance Group denied plaintiff's claim for injury in February, 1993.
42. Due to his lack of convincingness and credibility, plaintiff has failed to sufficiently meet his burden of proof by a preponderance of the admissible evidence that he sustained an injury by accident arising out of and in the course of his employment with Siemens on January 26, 1994. Plaintiff's testimony is simply not credible or convincing when viewed in the light of testimony concerning the alleged February 22, 1993 injury and all of the inconsistencies and discrepancies between the medical records and his testimony.
* * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer either on February 22, 1993 or on January 26, 1994. A person claiming the benefit of compensation has the burden of showing that the injury complained of, resulted from an accident arising out of and in the course of the employment. Plaintiff has not met the requisite burden of proof. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 57 S.E.2d 760 (1950).
2. In meeting that burden of proof, the Commission is the sole judge of the credibility and weight to be given the testimony; it may accept or reject all of the testimony of a witness. Plaintiff's testimony is rejected as not credible or convincing. Blalock v. Roberts Co., 12 N.C. App. 499,183 S.E.2d 827 (1971).
3. The hearing officer is the best judge of the credibility of witnesses due to being the first hand observer of witnesses whose testimony must be weighed, accepted or rejected. Pollard v.Crispy Waffle No. 1, 63 N.C. App. 354, 304 S.E.2d 762 (1983). The undersigned give deference to her judgment as to plaintiff's demeanor.
* * * * * * * * * *
Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
ORDER
1. This claim is hereby DENIED.
2. Each side shall bear its own costs.
This case is ORDERED REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1996.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/nwm 10/08/96