The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reached the same facts and conclusions as those reached by the Deputy Commissioner, with minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed at all relevant times.
3. Compsource, Inc. is the insurance carrier on the risk on the date in question.
4. The date of plaintiff's alleged injury by accident was November 22, 1994.
5. The parties stipulated to the following medical records:
a. Pitt Orthopaedic Services.
b. Eastern Radiologist
c. East Carolina Neurology
6. The issues in this case are as follows:
 a. Did plaintiff sustain an injury by accident on November 22, 1994?
 b. Were plaintiff's absences from work and medical bills due to a compensable injury?
c. To what compensation is plaintiff entitled?
***********
Based upon all of the competent credible and convincing evidence adduced at the initial hearing and from the record as a whole, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a male, 23 years old at the time of the initial hearing, who attended school through the eighth grade. In January of 1995, plaintiff earned his GED.
2. Prior to his coming to work for defendant-employer, plaintiff had numerous jobs, most of which he held for less than a month. He was employed by Dupont for a three month period as his longest period of work.
3. Plaintiff has had two prior Workers' Compensation claims. He had a broken hand taken care of through Workers' Compensation, and in 1992, plaintiff had a muscle back strain. The latter claim was made in 1993 and was settled in August 1994.
4. Plaintiff began working for defendant-employer in November 1994. His job was to paint various facilities for companies which contracted with defendant-employer. Plaintiff's job as a painter included preparing to paint, moving and shifting ladders, and carrying various paint-related items to and from the paint sites. Plaintiff normally worked a 40-hour week.
5. Prior to November 22, plaintiff had actually worked for defendant-employer only three days. On November 22, 1994, plaintiff was in the process of painting. After taking a break sometime after 9:00 a.m., he stated that he began to climb an A-frame type aluminum ladder in order to resume painting. Plaintiff claims that as he was climbing, he lost his balance and fell approximately four feet, landing on a hard cement floor. Plaintiff claimed that as a result of this fall, he injured his back.
6. Plaintiff's testimony regarding his alleged injury is not accepted as credible or convincing for numerous reasons. First, plaintiff has told several versions of his story. Second, plaintiff has given several dates for an accident which occurred during the time plaintiff was boating, when he had a mishap prior to his claimed injury at work. Third, plaintiff's testimony and that of his treating physician, Dr. Barsanti, are at odds with regard to how plaintiff might have been injured. Fourth, plaintiff's testimony regarding his continued inability to work and his treatment by doctors is inconsistent with the medical records and the testimony of the medical expert. Lastly, the testimonies of witnesses called on plaintiff's behalf and on behalf of the defense are also inconsistent with the testimony of plaintiff.
7. Plaintiff related at least two different versions of his injury to witnesses who were either in the room with him when he claimed he sustained his injury or who entered the room shortly thereafter. First, plaintiff related to his co-workers that he had been climbing on the ladder and was in the view and sight of his friend Mr. Bickle, who was also employed by defendant-employer. He stated that he was injured when he fell attempting to take a can of paint from Mr. Bickle's hand. When it became evidence that there was no paint spilled on the floor and moreover that a can of paint was sitting undisturbed on the floor of the room where plaintiff was painting, plaintiff's story changed. Next, plaintiff asserted that Mr. Bickle was attending to other work with his back to plaintiff when plaintiff started up on the ladder without a can of paint in his hand and that his foot missed a rung, leading to his fall off the ladder. Mr. Bickle's testimony is not clear on the point of whether he observed plaintiff falling or not. At the hearing Bickle stated he "sort of saw" plaintiff fall, partially on his side and partially on his back. For these reasons, neither the testimony of Mr. Bickle nor that of plaintiff, is accepted as credible or convincing as to an accident occurring on the job.
8. Several witnesses who observed plaintiff at work the morning of November 22, noted that plaintiff was pale, walked strangely and, acted as if he were stiff and in pain. All witnesses clearly remembered being informed by plaintiff that he had been involved in a boating mishap the day before allegedly sustaining an injury at work. Plaintiff's testimony is sharply at odds with the testimony of other witnesses in that he insisted a boating accident took place before he even began in the employment of defendant-employer.
9. Plaintiff insisted that if he had been involved in a boating accident, the mishap was in that the motor fell off the boat and into the river. Other witnesses were sure that plaintiff related an incident where the boat flipped over and plaintiff was dumped into the river in addition to the motor falling off the boat. The significance of whether or not the boat tipped over becomes more clear when one examines the type of back injury with which plaintiff presented to Dr. Barsanti in the hospital emergency room.
10. Plaintiff was taken by ambulance to the hospital. Plaintiff was there examined by Dr. Barsanti and found to have a compression fracture of the twelfth thoracic vertebra. A compression fracture occurs when a person lands in a position so that there is an axial load to the vertebrae causing pressure by way of compression and even sometimes a bursting vertebrae injury. A compression fracture is not consistent with a fall directly on the head or back. Moreover, plaintiff is not entirely clear about whether he actually fell flat on his back indicating once or twice that he sort of fell on his side and back. A compression fracture such as the one sustained by plaintiff is perhaps more easily explainable by virtue of being flipped out of a boat than by falling a short distance to a floor and landing squarely on the back or on the side. Compression fractures are the result of having pressure directly on the top of the spinal column. In any event, regardless of where else plaintiff may have sustained his injury, the undersigned do not find his testimony to be credible or convincing as to the injury having occurred at work due to the above-stated reasons.
11. Further, plaintiff's demeanor shortly after the alleged accident was not compatible with having just sustained a severe compression fracture and paraesthesia of the legs. The accounts of all witnesses are that plaintiff was laughing, joking, and smiling as he lay on the floor.
12. Plaintiff was advised to do no lifting for a three-month period subsequent to his claimed injury by accident. On April 26, 1995, however, plaintiff was placed by Dr. Barsanti on limited restriction of not lifting over 25 pounds. At that time he could have returned to do light duty. Plaintiff maintained at the hearing, however, that he was under severe and limiting restrictions from Dr. Barsanti and could not return to work, despite notes to the contrary in the medical record. Plaintiff at no time contacted defendant-employer to request light work or continuing employment. Ralph Combs, the superintendent, attempted to telephone plaintiff several times to have him return to work at light duty, if necessary. However, Combs was unable to reach plaintiff.
13. Perhaps the only information supplied by the plaintiff which is credible and convincing is that he has contacted no one about working and would not seek employment until he was ready to do so.
14. Plaintiff's testimony and demeanor at the initial hearing were inconsistent with other evidence of record and were not accepted as credible or convincing by the Deputy Commissioner, and the undersigned believe and find that the deputy made a correct finding as to the lack of plaintiff's credibility or convincingness.
15. Plaintiff has failed to present sufficient credible or convincing evidence of record to establish that he sustained a specific traumatic incident or injury by accident to his back sustained during the course and scope of his employment with Brewer Paint and Wallpaper Company. Thus, he has failed to sufficiently meet his burden of proof that he was injured by way of accident or specific traumatic incident arising out of and in the course of his employment on November 22, 1994.
16. Plaintiff's average weekly wage with defendant-employer was $300.00 a week.
17. The competent credible and convincing evidence of record indicates that plaintiff's injury may well have resulted from a cause independent of his employment relationship with defendant-employer. Thus, plaintiff's incapacitation and inability to return to work after November 22 are also independent of his work relationship with defendant-employer.
18. Plaintiff sustained a ten percent (10%) permanent partial impairment to his back as a result of his compression fracture which was not related to his job with defendant-employer.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has failed to sufficiently or convincingly meet his burden of proof and the competent, credible and convincing evidence of record is insufficient to establish by preponderance of the evidence in the case that plaintiff suffered from a specific traumatic incident or injury by accident during the course and scope of his employment with defendant-employer Brewer Paint and Wallpaper Company. N.C. Gen. Stat. 97-2 (6).
2. Plaintiff's testimony, and other evidence, which, if believed, would tend to establish that he sustained a compensable injury to his back is not accepted as credible or convincing to the undersigned. The Commission is empowered to make findings of fact regarding the credibility of a witness or party. Blalock v.Roberts Co., 12 N.C. App. 489 [12 N.C. App. 499], 183 S.E.2d 827 (1971).Morgan v. Furniture Inc., 2 N.C. App. 126, 161 S.E.2d 619 (1968).
3. Since plaintiff did not sustain an injury by accident or through specific traumatic incident of his employment with defendant-employer, he is not entitled to be compensated or to receive benefits under the Workers' Compensation Act.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following
AWARD
1. Plaintiff's claim must be, and hereby is DENIED.
2. Each side shall bear its own costs.
This case is HEREBY REMOVED from the Full Commission hearing docket.
This the _____ day of _____________, 1997.
 S/ _______________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________ LAURA K. MAVRETIC COMMISSIONER
S/ _______________ BERNADINE S. BALLANCE COMMISSIONER
JHBjr:abk