The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
******************
EVIDENTIARY RULINGS
The Full Commission hereby DENIES plaintiff's Motion to Reopen the Record to Take Additional Testimony. At the 5 June 1996 hearing before former Deputy Commissioner Shuping in this matter, the former Deputy Commissioner indicated, without objection by either party, that he would consider the witnesses tendered for corroborative purposes.
The Full Commission hereby GRANTS plaintiff's Motion to strike all information in motions or briefs regarding any criminal trial or conviction of plaintiff that is not contained in the record of this matter.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The Pre-Trial Agreement in which the parties agreed to a number of jurisdictional and factual stipulations is incorporated by reference as if fully set-out herein.
2. The deposition of Calvin Clayton is received into evidence.
3. The medical records and depositions of Drs. Scott Sanitate, S. Mitchell Freedman and Elliot Kopp are received into evidence.
4. The parties stipulated voluminous medical and rehabilitation records to complete the record and submitted statements of contention.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 39 year old married female with a twenty year history of fibromyalgia, who lives with her husband on an approximate thirty-five acre working farm outside of Roxboro and continues to care for her several horses and other animals, including a couple of dogs and a goat.
Fibromyalgia is a rheumatic condition of unknown etiology or cause involving the soft tissues, muscles, ligaments, tendon and bursa which is manifested by diffuse pain, and is a condition that is subject to being flared or aggravated by stress. Plaintiff experienced fibromyalgia in her neck and shoulders which required medical treatment while living in Wisconsin and Ohio prior to moving to North Carolina.
2. Plaintiff initially completed the tenth grade, but subsequently obtained a GED or high school equivalency certificate. She also took college level courses in supervision and time management. She has prior work experience as a fabricator and a supervisor for General Electric and Diversified Fabricators, Inc., as a physical fitness instructor at the YMCA and a private health clinic, as a supervisor for a ceramic component manufacturer and at another kennel for a short period of time.
3. In 1990 plaintiff began working for defendant-employer as a veterinary assistant where her primary duty was taking care of animals, including bathing, grooming and medicating animals, cleaning and disinfecting their cages and assisting veterinarians with surgery.
4. Plaintiff sustained the admittedly compensable low back injury that was the subject of the prior Industrial Commission Award on 7 August 1992 when lifting a large struggling dog onto the operating table for surgery. She has continued to receive weekly compensation benefits under the same Award since her injury.
5. Plaintiff initially sought medical treatment for her low back injury the following morning from Dr. Jones, an associate of her family physician, Dr. Aycock. Dr. Jones placed her on strict bedrest and recommended both heat and ice treatment.
6. Plaintiff was subsequently referred to Burlington's Kernodle Clinic where she was initially seen by Dr. Kernodle, then Dr. Califf, who placed her on a continued course of conservative treatment, including multiple medications and physical therapy. He also had her undergo a diagnostic EMG and nerve conduction studies, MRI and discography, which did not demonstrate any clinical abnormalities.
7. Dr. Califf subsequently referred plaintiff to a work hardening program at Southwinds in Durham. However, plaintiff did not complete the program because it was allegedly too painful. Dr. Califf then referred plaintiff to a local work hardening program with physical therapy at Health Focus. At Health Focus, plaintiff underwent a functional capacity evaluation which demonstrated symptom magnification and the absence of objective findings that were either anatomically or physiologically consistent.
8. Dr. Califf ultimately released plaintiff to return to unrestricted work on 1 March 1993 and gave her a five percent permanent partial disability rating of the back from the involved back injury.
9. In the interim plaintiff was referred for a second opinion to Dr. Robert Price, a Durham neurosurgeon, who had her undergo additional diagnostic testing, including a myelogram and CT scan, which demonstrated no evidence of nerve root compression or a herniated disc. As a result, Dr. Price determined plaintiff was not a surgical candidate, but recommended several weeks of a work hardening program with an intense psychological component.
In Dr. Price's opinion, absent improvement after three or four weeks in such a program, plaintiff would have reached maximum medical improvement from her back injury. Dr. Price would have then rated plaintiff as retaining a five percent permanent partial disability of the back from the same injury and released her to return to unrestricted work.
10. Although plaintiff attempted to return to her regular veterinary assistant's job in early March 1993, she worked there less than a week because she claimed it was too painful.
11. That same month plaintiff came under the care of Dr. Scott S. Sanitate, a specialist in physical medicine and rehabilitation, who has continued to treat her to date and has provided a conservative course of treatment, including multiple medication and epidural injections.
12. By 28 June 1993 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the back injury giving rise hereto, at which time Dr. Sanitate rated plaintiff as retaining a five percent permanent partial disability of the back as a result of her 7 August 1992 back injury. Dr. Sanitate released her to return to work with the restrictions of no lifting more than thirty pounds, the ability to change positions frequently due to the increasing pain she claimed while sitting and no driving more than fifteen to twenty minutes to a job due to her alleged pain from prolonged sitting.
Dr. Sanitate placed the restrictions on plaintiff's ability to return to work based upon the veracity of her subjective complaints. If plaintiff was not truthful in those complaints, then she was able to return to unrestricted work, including her regular veterinary assistant's job, as well as any of the other multiple jobs she had previously done, which are more fully described in Finding of Fact No. 2 hereinabove. Although defendant-employer engaged the services of a vocational rehabilitation specialist in an unsuccessful attempt to return plaintiff to work within the restrictions provided by Dr. Sanitate, the focus of the vocational rehabilitation efforts were also based on the assumption that plaintiff's subjective pain complaints and the resulting restrictions Dr. Sanitate placed on her were actual reflections of plaintiff's capacity to work and earn wages. However, plaintiff was untruthful in her complaints by misrepresenting her condition and her capacity to work and not only sabotaged any attempt to return her to work, but voluntarily removed herself from the work force. In fact, plaintiff was capable of returning to her regular veterinary assistant's job, as well as unrestricted work consistent with her age, education, background and work experience, which was undisputedly available and could have been obtained had she made any effort to find work.
13. Plaintiff has also continued to receive medical treatment from her family physician, Dr. Aycock, who in February of 1994 referred her to a rheumatologist associated with Duke University Medical Center, Cheryl Robertson, and Dr. Robertson subsequently referred plaintiff to the pain clinic there.
14. In June of 1994 defendant-carrier referred plaintiff to Dr. William Lestini of Triangle Spine and Back Care Center for evaluation and he performed additional diagnostic testing, including a repeat MRI and discogram.
Based on her normal electrodiagnostic studies, including a discordant discogram, as well as significant non-organic physical signs on examination, Dr. Lestini likewise felt that plaintiff had reached maximum medical improvement, did not retain any permanent partial disability from the involved back injury and released her to return to unrestricted work.
15. Due to plaintiff's continued complaints, in May 1995, Dr. Sanitate referred plaintiff for evaluation to Dr. Leonard Nelson of Raleigh Orthopedic Clinic. Dr. Nelson had plaintiff undergo an MRI of the entire spine, which was normal and did not feel she was a surgical candidate.
16. Of her own volition plaintiff began seeing Dr. Kobb, a rheumatologist, in October 1996. Dr. Kobb provided her multiple medications including the same type of narcotic she was concurrently receiving from Dr. Sanitate. However, plaintiff did not advise either doctor of this fact.
17. Plaintiff contends that she experiences incapacitating pain from the involved back injury which renders her unable to return to work in any capacity and earn any wages.
Plaintiff's testimony, and other evidence, which if believed, would tend to establish that she is totally and permanently disabled is not accepted as credible based not only on her demeanor at hearing, but the following facts.
18. Surveillance of plaintiff has been conducted over an extended period of time, including May 1993, November and December 1993 and May 1995. In her deposition, taken 10 August 1995, plaintiff testified that since her injury she had been unable to engage in the physical activities she was shown performing on a repetitive basis for extended periods of time on the videotapes made by the private investigators conducting surveillance.
Among other activities, plaintiff contends that since her injury she has not been able to stand up straight, she has been unable to bend over to below knee level, much less bend over all the way to the ground, and to do so repeatedly for extended periods of time, to squat down and pick up something from the floor without using a cane or something else for support, lift more than five pounds, use a wheelbarrow, sit for extended periods of time, wash and groom her horses, or walk the three to four hundred feet from her residence to the barn where the horses are kept without using a cane or riding in the golf cart her husband had purchased for this purpose. She claims to have been using a cane for at least a year prior to her deposition.
19. She was not only shown on videotape, but observed by the private investigators conducting surveillance, performing all those activities on a repetitive and sustained basis for extended periods of time. Despite denying the ability to do so, plaintiff has also been able to pick up bales of hay weighing in the twenty-five to forty-five pound range at the tack shop operated by Calvin Clayton during the period between December 1993 and August 1994 and load them in her truck.
20. The surveillance videotapes and the testimony of the private investigators who took them confirm the fact that that plaintiff's subjective complaints of pain and the extent to which she claimed she is limited by the pain are not credible. Further her subjective complaints are clearly out of proportion to any of the objective findings of multiple physicians who have evaluated and/or treated her. Although she has undergone multiple and repeated diagnostic testing, none of those tests were able to demonstrate any objective basis for her complaints; but rather, demonstrate symptom magnification in the absence of objective findings that are either anatomically or physiologically consistent.
21. On at least one occasion Dr. Sanitate observed plaintiff walking normally after leaving his offices, despite plaintiff's claim that she had not able to stand up straight since her injury and appeared in this condition when she arrived at his offices. This is consistent with the unimpeded manner that she was shown walking on defendant-employer's surveillance videotape on a repetitive basis for extended periods of time and is consistent with her actual ability to stand straight up as well as to walk without a cane at a normal, or even greater pace.
22. Plaintiff's subjective complaints have significantly worsened since her deposition. However, this represents either a continuing intentional attempt to misrepresent her actual physical activities and resulting capacity to work once learning not only that she had been videotaped performing activities she had denied in her deposition being capable of performing since the injury, but that she was under investigation for criminal fraud, and/or was due to her pre-existing fibromyalgia being flared or aggravated by the stress of both investigations that, in fact, were engendered by plaintiff's own misrepresentation of her condition.
23. By 28 June 1993 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following her 7 August 1992 low back injury, at which time she did not retain any permanent partial disability from the same injury, was capable of returning to unrestricted work, including her veterinary assistant's job and any substantial change for the worse in her condition since has been engendered by plaintiff's continued misrepresentation of her actual physical condition and resulting capacity to work. Had plaintiff not sabotaged the attempt to return her to work by misrepresenting her actual physical condition and her resulting capacity to work, she could have obtained work, including as part thereof, returning to her regular veterinary assistant's job, or similar work consistent with her age, education, background and work experience, which had involved performing the other types of work described in Finding of Fact No. 2 hereinabove and includes medium to heavy level work.
24. Plaintiff's claim for continued Workers' Compensation benefits was based upon stubborn, unfounded litigiousness.
******************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. By 28 June 1993 plaintiff had reached maximum medical improvement and/or the end of the healing period from and following her 7 August 1992 back injury, at which time she did not retain any permanent partial disability from the same injury, was able to return to unrestricted work, including her regular veterinary assistant's job. Further, any substantial change for the worse in her condition since has been engendered by plaintiff's own continued intentional misrepresentation of her actual physical condition and resulting capacity to work. Thus, liability does not rest on defendants. Hill v. Hanes Corporation,102 N.C. App. 46, 401 S.E.2d 768 (1991).
2. For the reasons stated in the above findings of fact, plaintiff's testimony, and other evidence, which if believed would tend to show that she is totally and permanently disabled by her 7 August 1992 back injury is not accepted as credible.
Concerning credibility of witnesses in a Workers' Compensation proceeding, Judge Hedrick, speaking for the Court of Appeals in Blalock v. Roberts Company, 12 N.C. App. 499,183 S.E.2d 827 (1971) stated:
 "The Commission is the sole judge of the credibility of the witness and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part. Robbins v. Nicholson, 10 N.C. App. 421, 179 S.E.2d 183 (1971); Morgan v. Furniture, Inc., 2 N.C. App. 126, 162 S.E.2d 619 (1968) and Anderson v. Motor Company, 233 N.C. 372, 64 S.E.2d 265 (1951). The Commission has the duty and authority to resolve conflicts in the testimony of a witness or witnesses. If the findings made by the Commission are supported by competent evidence, they must be accepted as final truth. Rooks v. Cement Company, 9 N.C. App. 57, 170 4th S.E.2d 324 (1970); Petty v. Associated Transport, 4 N.C. App. 361, 167 S.E.2d (1968)."
3. Plaintiff shall pay to the defendants reasonable attorney's fees in the amount of $5,000.00 as the Full Commission determines that this proceeding by plaintiff for continued benefits against the defendants was based upon stubborn unfounded litigiousness and was without reasonable ground. N.C. Gen. Stat. § 97-88.1.
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for total and permanent disability must be and is hereby DENIED.
2. Each side shall bear their own costs, and as part of their costs defendants shall pay the expert witness fees previously awarded Doctors Sanitate, Kopp and Freedman for their deposition testimony to the extent they have not already been paid.
3. Plaintiff shall pay for defendants' attorney fees for the appeal to the Full Commission in the amount of $5,000.00.
This is the 13th of October 1997.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ___________________________ J. HOWARD BUNN JR. CHAIRMAN
S/ ___________________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER