The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Douglas E. Berger and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the entire evidence of record with reference to the errors assigned, the Full Commission hereby reverses the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement at the hearing on 1 December 1998 as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers Compensation Act.
2. An employment relationship existed between the employer and employee hereto on or about 8 January 1996; 31 January 1996 and 23 June 1996.
3. On the above dates, the employer was insured by the Insurance Company of the State of Pennsylvania.
4. All parties are correctly designated.
5. The decedents average weekly wage was $207.99 yielding a compensation rate of $138.66.
 ***********
Based upon the entire record of evidence, the Full Commission makes the following:
 FINDINGS OF FACT
1. On or about 9 January 1996, decedent went to Murphy Medical Center emergency room to receive treatment for back pain which he alleged was related to lifting heavy objects while working for defendant-employer. Decedent was prescribed Flexeril and was restricted from lifting heavy objects for a five day period. An x-ray of decedents spine revealed no abnormalities at that time.
2. On or about 31 January 1996, decedent slipped on a wet floor and fell while performing his regular job for defendant-employer. As a result of this fall, decedent sustained lumbar and cervical strains. On 1 February 1996, decedent went to Murphy Medical Center emergency room to receive treatment for back and neck pain. Decedent was restricted from returning to work and prescribed Naprosyn, Flexeril and Lorcet. X-rays revealed no abnormalities in plaintiffs cervical or lumbar spine.
3. Blood tests taken on 1 February 1996 revealed that decedent had a normal blood platelet count.
4. On 12 February 1996, defendants filed a Form 60 with the Industrial Commission admitting the compensability of decedents 31 January 1996 injury.
5. Decedent was treated by Dr. Frank Osborne on 7 February and 14 February 1996, with complaints of continued low back and left leg pain. Dr. Osborne prescribed Flexeril and Naprosyn and returned decedent to light duty work on 14 February 1996.
6. Based upon a prescription summary which is part of the record, decedent obtained twenty (20) Naprosyn and thirty (30) Flexeril on 1 February 1996 and sixty (60) Flexeril and sixty (60) Naprosyn on 23 February 1996.
7. On 23 June 1996, while performing his normal work duties for defendant-employer, decedent sustained a lumbar strain while mopping a floor for defendant-employer. Decedent again went to Murphy Medical Center emergency room and was prescribed Percocet and Flexeril.
8. On 27 June 1996, decedent sought treatment for his back pain at Peachtree Orthopedic Clinic, where Dr. Rogers observed that decedents right thigh circumference was four centimeters greater than his left thigh circumference. Dr. Rogers recommended decedent stop taking Flexeril and Percocet and gave him a seven day trial supply of Naprosyn.
9. On or about 6 July 1996, decedent was driving a car with a group of friends when he complained of sudden pain and pulled the car to the side of the road. He immediately became unconscious and died.
10. An autopsy conducted by pathologist, Dr. Joe Paul Hurt, revealed that decedent died as a result of sudden blood loss from the vascular tree (hypovolemia) secondary to a massive retroperitoneal hematoma, etiology unknown.
11. Dr. Hurt did not identify the cause of death but did note in his autopsy report that there was a possibility of abnormal vessels in the hematoma and that this may have precipitated the massive bleeding which caused decedents death.
12. At the hearing on 1 December 1998, decedents mother testified that decedent had surgery to correct a hypospadius condition when he was three years old. This condition is a congenital defect of the genitals. She also testified that decedent had fainted on three occasions. The autopsy revealed that decedent had a floppy mitral valve which may have caused the fainting. The autopsy also revealed that decedent had a duplex kidney, a congenital defect by which one kidney grows as though it were cinched in the middle, an abnormality in the branching of the aorta below the renal arteries.
13. Dr. Hurt noted in his autopsy report that platelets were absent from decedents clotted blood. Additionally, decedents thighs were of the same circumference at the time of his death.
14. Based upon a review of this information in the autopsy report, Dr. John J. W. Yoder, an orthopedic surgeon, opined that the numerous and various medications decedent took for his back pain caused a poisoning of his bone marrow such that it did not produce blood platelets. Dr. Yoder clarified that thrombocytopenia, the condition which is a decrease in the number of blood platelets occurs, only on rare occasions but in association with the medications decedent was taking. Finally, Dr. Yoder testified that he believed the reason decedents right thigh was larger than his left nine days before his death was because of a slow hemorrhage going into his right leg.
15. In reviewing Dr. Yoders opinions, it must be noted that he never examined decedent. Dr. Yoder is not board certified in hematology or pathology and testified that he has never treated a patient with thrombocytopenia.
16. Pharmacist, Steve Roberts, opined that some of the medications prescribed to decedent over the course of treatment for his back can, in rare instances, cause prolonged bleeding.
17. Pathologist, Dr. Page Hudson, former North Carolina chief medical examiner, established that an autopsy was not a good source of material to determine whether there was a platelet deficiency at death because autopsy tissue sections are too thick, platelets breakdown and the distribution of platelets after death is too random and uneven to yield an accurate measure.
18. Dr. Page Hudson testified that he does not believe any physician could opine within a reasonable degree of medical certainty the cause of decedents death because there is not enough evidence in the autopsy report to support a definitive conclusion. Dr. Joe Paul Hurt also arrived at this conclusion by noting in his autopsy report that the etiology of decedents death is unknown.
19. Dr. Hudson opined that the theory of thrombocytopenia as the cause of death is tenuous and unlikely. He further opined that thrombocytopenia presents by causing many small hemorrhages in the mucosal linings of the body such as inside the mouth, the bladder and the pelvis of the kidneys. In this case, decedent had one massive hemorrhage which is not a typical result of a platelet deficiency.
20. Dr. Hudson also opined that even if decedent had had a platelet deficiency at the time of his death, because the cause of death was a large hole in a sizable vessel, platelets would have been of little or no help because they would not have coagulated sufficiently to stop the bleeding.
21. Dr. Hudson opined and the Commission finds as fact, that it was very unlikely decedent was suffering from a slow hemorrhage into his right leg prior to his death as a hemorrhage into such a tightly compacted appendage would be extremely painful. Prior to his death, decedent complained of pain in his left, but never in his right leg. Dr. Hudson opined that it was more likely that his left leg was smaller due to muscle atrophy and became symmetrical with the right leg when the massive hemorrhage dissected into his left leg at death.
22. Dr. Hudson opined and the Commission finds as fact that the more likely cause of death was a ruptured blood vessel in the retroperitoneal cavity, caused by a congenital defect. He based his opinion on the facts that the autopsy revealed that plaintiff had several congenital defects in that part of his body, including a hypospadius condition, a duplex kidney, an abnormal branching of the aorta below the renal artery and azoospermia, and that congenital defects tend to "cluster.
23. The Full Commission gives greater weight to the opinions of Dr. Page Hudson on the issue of causation. Dr. Hudson is a board certified pathologist, certified to practice in the state of North Carolina, having served as the states chief medical examiner for over 20 years. He has examined bodies in which the cause of death was platelet deficiency (thrombocytopenia) and understands how the condition typically presents.
24. Decedents death was not caused, directly or indirectly, by the medications which he was prescribed for his back pain stemming from injuries he sustained at work while employed for defendant-employer. The more likely cause of death was a rupture of a blood vessel due to a congenital abnormality in that portion of decedents body.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. It is plaintiffs burden to show that decedents death was a direct and natural result of the admittedly compensable injuries he sustained. Starr v. Charlotte Paper Co., 8 N.C. App. 604,175 S.E.2d 342 (1970). Except in uncomplicated medical cases, expert medical testimony is necessary to establish a prima facie case of causal relationship between an alleged work condition and alleged injury. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980). The Industrial Commission is the sole judge of the credibility and weight to be given the testimony of witnesses and it may accept or reject all of the testimony of a particular witness. Blalock v. Roberts Co., 12 N.C. App. 499,183 S.E.2d 827 (1971).
2. Plaintiffs have failed to offer credible evidence that decedents death was caused by the medications he was prescribed for his back condition, or otherwise caused by his compensable work injuries sustained while employed for defendant-employer. G.S. 97-2(6); G.S. 97-38.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiffs claim for workers compensation benefits is DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER